## In re AUTODESK, INC. SECURITIES LITIGATION

**This Document Relates to: All Actions**

**No. C–00–1285 PJH.**

United States District Court, N.D. California.

Nov. 14, 2000.

Kirk B. Hulett, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Patrick J. Coughlin, David R. Stickney, Milberg Weiss Bershad Hynes & Lerach LLP, David R. Kathrein, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, Jack L. Chestnut, Karl L. Cambronne, Brian N. Toder, Chestnut & Cambronne, Minneapolis, MN, Fred T. Isquith, Shane T. Rowley, Brian S. Cohen, Wolf Haldenstein Adler Freeman & Herz, New York City, Charles J. Piven, Law Offices of Charles J. Piven, Baltimore, MD, Francis M. Gregorek, Francis A. Bottini, Jr., Betsy C. Manifold, Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, CA, Reed R. Kathrein, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, Richard D. Kranich, Law Offices of Richard D. Kranich, New York City, for Plaintiffs.

Boris Feldman, Ignacio E. Salceda, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, William F. Alderman, Denise M. Alter, Orrick Herrington & Sutcliffe LLP, San Francisco, CA, for Defendants.

## ORDER RE MOTION TO DISMISS

HAMILTON, District Judge.

The motions of defendants Autodesk, Inc. Carol A. Bartz. Eric B. Herr, and Christine Tsingos ("the Autodesk defendants") and U.S. Bancorp Piper Jaffray to dismiss the complaint for failure to state a claim came on for hearing on November 8,

2000, before this court, the Honorable Phyllis J. Hamilton presiding. Plaintiffs appeared by their counsel Jeffrey W. Lawrence and Michael R.R. Reese, the Autodesk defendants appeared by their counsel Boris Feldman, and U.S. Bancorp Piper Jaffray appeared by its counsel William F. Alderman. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motions as follows for the reasons stated at the hearing.

## BACKGROUND

This is a proposed class action alleging violation of the federal securities laws. Plaintiffs are individuals who purchased stock of defendant Autodesk, Inc. ("Autodesk") between September 14, 1998, and May 4, 1999 ("the class period"). During the class period, defendant Carol A. Bartz ("Bartz") was the Chief Executive Officer and Chairman of the Board of Autodesk; defendant Eric B. Herr ("Herr") was President and Chief Operations Officer, and defendant Christine Tsingos ("Tsingos") was the Treasurer. Defendant U.S. Bancorp Piper Jaffray ("Piper Jaffray") served as Autodesk's financial advisor and underwriter of Autodesk's March 1999 secondary offering.

Autodesk creates and sells computer-aided-design ("CAD") software for use by mechanical designers and engineers, architects, civil engineers, and mapping and geographic information systems designers and professionals, as well as by educators and students in the above areas. Autodesk's principal product is the AutoCAD, a computer aided design tool which has historically provided the largest percentage of Autodesk's revenues.

Plaintiffs claim that because the AutoCAD is Autodesk's primary product, the rise and fall of the price of its stock has historically reflected the life-cycles of the various versions or upgrades of AutoCAD that have been released over the years. According to plaintiffs, Autodesk was un-able to achieve any real growth during the years 1995 through 1997 because the R13 AutoCAD upgrade, released in 1995, was bug-ridden and technically flawed. Plaintiffs contend that as a result of this poor performance, Autodesk's top three executives (defendants Bartz, Herr, and Tsingos) were under increasing pressure from Autodesk's board and large investors to make some significant acquisitions that would diversify Autodesk's product line and lessen Autodesk's dependence on the AutoCAD line.

Beginning in the summer of 1997, Autodesk management began meeting with management of Discreet Logic, Inc., to discuss the possible acquisition of Discreet Logic by Autodesk. Plaintiffs claim that Bartz, Herr, and Tsingos knew that any significant acquisition could be made only by using Autodesk's stock as "currency" to pay for the acquisition, and that during the period when the acquisition of Discreet Logic was being negotiated, they were under pressure to raise the value of the stock as high as possible so that fewer shares of stock would have to be turned over to pay for the acquisition. Plaintiffs claim that defendants issued false statements to the public during the period between mid-September 1998 and early April 1999 in an attempt to artificially bolster the price of the stock until the completion of the acquisition of Discreet Logic in March 1999. On the same date that the shareholders voted to approve the acquisition, Autodesk also completed a secondary public offering of 3 million shares of Autodesk stock.

Plaintiffs allege that defendants issued statements that were false or misleading regarding the sales of the R14 AutoCAD (successor to the R13), and regarding the progress of the testing and development of the R14's successor product the R15 AutoCAD 2000, which was released in March 1999. Plaintiffs allege that these false statements were made by Bartz, Herr, and/or Tsingos during meetings or conferences with groups of analysts and large investors, and also appeared in written

reports issued by Piper Jaffray analyst Hany Nada, in financial news service reports of interviews with Herr and Bartz, and in one or more Autodesk press releases.

Specifically, plaintiffs claim that defendants represented that sales of the R14 were strong, but failed to disclose that the reason the sales were strong was that Autodesk had implemented a customer incentive program (the "VIP Upgrade" program) which offered purchasers of the R14 the opportunity to obtain the upcoming R15 upgrade at a discount as well as a retailer discount incentive program, which encouraged retailers to order more of the R14 product than they could reasonably hope to sell. Plaintiffs also allege that defendants falsely stated that the release of the R15 would have a positive impact on Autodesk's revenue and earnings per share in FY 2000.

Plaintiffs claim that the market relied on the alleged false statements, and that the price of Autodesk's stock was thereby kept artificially high. Plaintiffs claim that the purpose of the scheme was to enable Autodesk to acquire Discreet Logic for the fewest number of shares possible. In so doing, defendants Bartz and Herr also assured themselves of large bonuses. Plaintiffs claim that when Autodesk announced that revenue and earnings per share were significantly lower in FY 2000 than defendants had predicted, the price of the stock dropped accordingly.

Plaintiffs also allege that Piper Jaffray agreed to participate in the scheme to inflate Autodesk's stock, including promising to issue positive research reports on Autodesk. Plaintiffs claim that Piper Jaffray knew that Autodesk could not complete either the Discreet Logic acquisition or the secondary offering unless the price of the stock was kept high, and that Piper Jaffray was motivated to participate in the scheme because of the fee it was to receive for underwriting the secondary offering.

Plaintiffs filed this action alleging securities fraud in violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission. The Autodesk defendants and Piper Jaffray now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## DISCUSSION

A. Legal Standards

1. Motions to dismiss under Rule 12(b)(6)

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir.1994).

Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir.1995). When matters outside the pleading are presented to and not excluded by the court, a Rule 12(b)(6) motion is to be treated as one for summary judgment, and all parties shall be given an opportunity to present all material made pertinent to such a motion by Rule 56. *See* Fed.R.Civ.P. 12(b). However, material that is properly presented to the court as part of the complaint may be considered as part of a motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). If a plaintiff fails to attach to the complaint the documents on which it is based, defendant may attach to a 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Thus, the court may consider the full text of a document

the complaint quotes only in part. *See In re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1405 n.4 (9th Cir.1996). *cert. denied,* 520 U.S. 1103, 117 S.Ct. 1105, 137 L.Ed.2d 308 (1997). The court's consideration of such documents does not convert the Rule 12(b)(6) motion into a motion for summary judgment. *See Branch,* 14 F.3d at 454.

Motions to dismiss for failure to state a claim are disfavored, *see Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. *See United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995) (citations omitted).

### 2. Section 10(b) and Rule 10b–5

Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).

Rule 10b–5 makes it unlawful for any person to use interstate commerce

(a) To employ any device, scheme, or artifice to defraud.

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

■ In order to state a claim under section 10(b) and Rule 10b–5, the plaintiff must allege 1) a misrepresentation or omission 2) of material fact 3) made with scienter 4) on which the plaintiff justifiably relied 5) that proximately caused the alleged loss. *See Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir.1999). Generally, plaintiffs in federal court are required to give a short, plain statement of the claim sufficient to put the defendants on notice. Federal Rule of Civil Procedure 9(b) also requires, however, that in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

### 3. Private Securities Litigation Reform Act

In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), adding additional pleading requirements for securities fraud actions. Under the PSLRA a complaint must "specify each statement alleged to have been false or misleading, [and] the reason or reasons why the statement is misleading." In addition, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *See* 15 U.S.C. § 78u–4(b)(1).

In order to adequately plead scienter under the PSLRA, the complaint "shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The requirement that the facts must give rise to a "strong inference ... [of] the required state of mind" means that "the evidence must create a strong inference of, at a minimum, 'deliberate recklessness.'" *In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970, 977

(9th Cir.1999). If the complaint does not satisfy the pleading requirements of the PSLRA, the court, upon motion of the defendant, shall dismiss the complaint. *See* 15 U.S.C. § 78u–4(b)(3)(A).

**B. Autodesk Defendants' Motion to Dismiss**

The Autodesk defendants argue that the complaint should be dismissed because plaintiffs have not satisfied the PSLRA's standard for pleading securities fraud, because the safe harbor and "bespeaks caution" doctrines mandate dismissal, and because plaintiffs have failed to adequately plead claims against defendants Herr and Tsingos for statements they did not make.

**1. False Statements or Omissions**

■ Defendants contend that plaintiffs have failed to plead fraud with sufficient particularity to satisfy Rule 9(b) and the PSLRA. In securities fraud cases. Rule 9(b) requires the inclusion of specific facts regarding the alleged fraudulent activity, such as the time, date, places, content of each fraudulent representation, the reasons that the representation is false, and the identity of the person or persons engaged in the fraud *See In re GlenFed Sec. Litig,* 42 F.3d 1541, 1547–49 (9th Cir.1994). The PSLRA added the requirement that the plaintiff "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1).

Defendants argue that plaintiffs' allegations with regard to false statements are deficient for two reasons. First, with regard to matters pled on information and belief defendants contend that plaintiffs fail to state with particularity all facts forming the basis of that belief, as required by the PSLRA. Second, with regard to the actual allegations of falsity, defendants claim that plaintiffs fail to set forth what is misleading about each allegedly false statement, and fail to state with particularity why the statements were false at the time they were made.

a. Information and belief requirement

Defendants argue that plaintiffs have failed to satisfy the "information and belief" requirement. Under the PSLRA, plaintiffs pleading on information and belief must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B) Plaintiffs respond that they have made no allegations relating to information and belief, and argue that none are required by either the PSLRA or the Ninth Circuit's opinion in *Silicon Graphics.* They cite a case from the Southern District of California, *Stanley v. Safeskin Corp.,* Case No. 99 CV 454(BTM)(LSP) (S.D.Cal. Sept. 15, 2000) for the proposition that "each allegation supporting a strong inference of scienter should not be considered individually. Rather, the court must answer the larger question of whether [plaintiffs'] complaint considered in its entirety, states facts which give rise to a strong inference of deliberate recklessness."

■ As defendants correctly point out, however, it is irrelevant whether a plaintiff uses the phrase "information and belief" when alleging false representations because allegations of misrepresentations not made on personal knowledge are presumed to have been made on information and belief. *See, e.g., In re Silicon Graphics,* 970 F.Supp. 746, 763 (N.D.Cal.1997) (noting that where plaintiffs do not allege personal knowledge, "the complaint must be based on information and belief—that is the only alternative") (citing *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987)).

The case cited by plaintiffs, *Stanley v. Safeskin Corp.,* is not persuasive because the issue before the court in that case was the standard for pleading scienter, not the standard for pleading misrepresentations on information and belief. The PSLRA distinguishes between the pleading of the misleading statements and omissions, and the pleading of the required mental state.

The section regarding misleading statements requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The section regarding the required state of mind requires that the complaint "shall, with respect to each act or omission alleged ..., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

■ The court finds that plaintiffs have not complied with the requirement regarding pleading on information and belief. In the allegations regarding the statements allegedly made by the individual defendants during the analysts' conferences and during the conference calls, see Consolidated Amended Complaint ("CAC")[1] ¶¶ 44, 48, 60, 66, plaintiffs allege no facts explaining why they believe that the statements they attribute to defendants were actually made by defendants. Similarly, in the allegations regarding the reasons plaintiffs believe that the alleged false representations were actually false, see ¶¶ 46, 51, 56, 62, 70, plaintiffs allege no facts indicating the basis of their belief.

For example, plaintiffs provide insufficient factual basis for their belief that "Autodesk was seeing the same type of drop-off in demand for its existing R14 Auto-CAD product line as it entered the latter part of its life-cycle as it had historically seen in the past" or that "the only reason that its R14 was showing strong sales was the incentive programs ..." ¶ 46(a). Plaintiffs allege generally that sales reports "generated on a weekly basis" by Autodesk's finance department revealed a "substantia' decline" in R14 sales, but they provide no specific information regarding the dates or the contents of the reports, or regarding the individuals who prepared or reviewed the reports.

■ Similarly, plaintiffs provide no basis for their belief that Autodesk was selling the VIP Upgrade package to its customers "[i]n order to conceal the true impact of the decline demand for its R14 products." ¶ 46(c). Nor do they provide any basis for their assertion that Autodesk was "encountering delays in completing the final development and testing of [the R15] due to technological problems and 'bugs'" or the claim that Autodesk was "rushing the R15 ... to market before it had been adequately tested and de-bugged and as a result, many customers were avoiding the R15 altogether in favor of the R14 or deferring acceptance of the R15 ... until it was further tested and de-bugged." ¶ 46(f). They allege no facts regarding the specific nature of the bugs or the technical difficulties, or their impact on product development, nor regarding the source of their claim that customers were avoiding the R15 or that they were delaying in purchasing the R15.

### b. Allegations of false statements

Defendants assert that plaintiffs' allegations of false statements are insufficient under the PSLRA because they fail to set forth what is false or misleading about each statement, and to explain with particularity why the disputed statement was false or misleading when made. Defendants contend that plaintiffs fail to allege any contemporaneous facts indicating that the statements were false when made, and also fail to provide particularized allegations concerning the contents, sources, authors, and recipients of the reports that they contend contained the "true" inside information.

In the section of the complaint headed "False and Misleading Statements During the Class Period," plaintiffs identify five

---

1. Citations to various paragraphs in the CAC are indicated in this order as "¶ ___."

general time periods during which they claim defendants made material misrepresentations, and within each of those periods, describe various occasions on which they claim false statements were made, or refer to various documents which they contend contain false statements. *See* ¶¶ 44–73. Following each of the five groups of allegations of false statements, plaintiffs provide a list of between 10 and 12 "reasons" that the statements were false at the time they were made. *See* ¶¶ 46, 51, 56, 62, 70. (For the most part, each of the five groups of "reasons" is similar to the others.)

The PSLRA requires plaintiffs to identify "each statement alleged to have been misleading." 15 U.S.C. § 78u–4(b)(1). In this case, however, it is difficult to tell from the complaint exactly which statements are alleged to be misleading. Plaintiffs take two approaches to identifying the allegedly misleading statements. In the first approach, when referring to the analysts meetings or conference calls, plaintiffs simply provide a long list of statements allegedly made by one or all of the three individual defendants—Bartz, Herr, and Tsingos. For example, in ¶ 44 (the 9/14/98 analysts' conference), plaintiffs list nine allegedly misleading statements, most containing more than a single assertion, and several overlapping with other statements in the list.

One of the statements in ¶ 44 reads as follows:

> Autodesk's new VIP program, which allowed customers to purchase the right to receive any product upgrades issued by Autodesk during the following two years, would benefit Autodesk's financial performance as, in many instances, customers purchasing the VIP upgrade privilege would ultimately end up purchasing at full price product upgrades issued after the two-year period.

It isn't clear, however, what is alleged to be false in this statement. Are plaintiffs claiming that Autodesk did not have a new VIP program, that the VIP program would not allow customers to purchase the right to receive product upgrades during the following two years, that the VIP program would not benefit Autodesk's financial performance, or that customers would not end up purchasing product upgrades issued after the two-year period?

As for the reasons the statement was allegedly false, ¶ 46 (the "reasons" paragraph that follows the lists of allegedly false or misleading statements in ¶¶ 44 and 45) includes two "reasons" that refer to the VIP Upgrade program. In ¶ 46(d) plaintiffs allege that

> Autodesk's VIP Upgrade program was certain to have a very negative impact on Autodesk's revenues and EPS in the first half of F00 as Autodesk's accountants had told it it had to book revenue from the VIP Upgrade contracts monthly over the life of the contracts.

In ¶ 46(e), plaintiffs claim that

> While Autodesk's new VIP Upgrade program was boosting Autodesk's F99 revenues and EPS, it was doing so only by, materially adversely affecting Autodesk's revenues and EPS in at least the first two quarters of F00 because, while the program had the effect of creating some additional revenue in F99, it was deferring substantial amounts of revenue that would otherwise have been recognized in the first two quarters of F00, throughout the balance of F00 and even into F01.

It is not clear, however, which portion of ¶ 46(d) and (e) is meant to explain why the statement quoted from ¶ 45 is false or misleading. Moreover, there is no indication of the factual basis upon which plaintiffs make these assertions.

The second approach, used when referring to the written analysts reports, the transcripts of radio interviews, or the press release(s), is to quote long passages from the various documents and to highlight portions of the quoted passages. In ¶ 45 (the 9/15/98 report by Piper Jaffray analyst Nada), plaintiffs have highlighted

six passages within the report. The highlighted portions are presumably meant to indicate or to emphasize false or misleading statements, although that supposition is not certain because plaintiffs allege few corroborating factual details suggesting that the statements are false or misleading

For example, one of the highlighted passages in ¶ 45 reads as follows:

> With a stronger more diversified business model, appealing new product shipment schedule, upcoming new market opportunities from the Discreet merger, lean channel inventories, favorable upside given the R15 upgrade is expected to ship early FY00, and cost saving opportunities could further drive earnings growth . . .

Plaintiffs do not, however, indicate exactly what is false within the highlighted passage. Are plaintiffs claiming that Autodesk did not have a stronger, more diversified business model, an "appealing new product shipment schedule," or "lean channel inventories"? Are they saying that the Discreet merger would not provide new market opportunities or that Autodesk did not expect to ship the R15 upgrade in early FY00?

Moreover, looking at the 10 "reasons" in ¶ 46, the court cannot locate any reference to a business model, to a product shipment cycle, or to channel inventories. The only allegation in ¶ 46 regarding the Discreet merger states that defendants knew that while Discreet Logic might provide substantial long-term EPS benefits to Autodesk, the acquisition would substantially dilute Autodesk's EPS by at least 15%–20% during F00. This is not a comment about new market opportunities, but rather a comment about the effect of the merger on Autodesk's earnings in the coming fiscal year. The only statement regarding the shipment of the R15 in the 10 reasons is the claim in 46(f) that Autodesk was rushing the R15 product to market before it had been adequately tested and debugged.

In short, plaintiffs have left it up to defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading. At the hearing, when the court asked plaintiffs' counsel to indicate where in the complaint plaintiffs had explained, for example, why the statement "[d]ue to Autodesk's reorganization into vertical product lines, Autodesk was seeing unusually strong continuing demand for its R14 AutoCAD product" (¶ 44) was false, counsel pointed to ¶ 46(a), which states that "[t]he only reason that its R14 was showing strong sales was the incentive programs set out in ¶¶ 31–43 and these sales were at the expense of the R15." Counsel indicated, in other words, that the reason the quoted statement in ¶ 44 was false could be found somewhere either in ¶ 46(a) or in ¶¶ 31–43 (the section entitled "The Scheme to Defraud," which appears at pages 18–23 of the complaint).

The court is unwilling, however, to search through the 51–page CAC as plaintiffs' counsel suggested, and also finds that it would be unfair to compel defendants to do so. As the Ninth Circuit explained, "[a] complaint is not a puzzle . . . and we are loathe to allow plaintiffs to tax defendants, against whom they have leveled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint." *GlenFed,* 42 F.3d at 1554.

### 2. Scienter

Defendants contend that plaintiffs fail to satisfy the requirement that the complaint raise a strong inference of scienter. Defendants also argue that plaintiffs have not states a claim against the individual defendants under the "group-published information" doctrine as asserted by plaintiffs.

### a. Pleading scienter

Under the standard articulated by the Ninth Circuit, plaintiffs must allege facts sufficient to create an inference of, at

a minimum, deliberate recklessness. *See Silicon Graphics*, 183 F.3d at 975. "We do this because we believe that [in enacting the PSLRA] Congress intended to bar those complaints that fail to raise a strong inference of intent or recklessness. The 'deliberate recklessness' standard best serves the PSLRA's purpose *Id.* This standard is stricter than the standard used in some other circuits. In particular the Ninth Circuit has rejected the standard utilized in the Second Circuit, where it is sufficient for a plaintiff in a federal securities fraud case to allege facts either showing that the defendants had both opportunity and motive to commit fraud, or constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *See id.* at 974 (citing *Press v. Chem. Inv. Serv. Corp.*, 166 F.3d 529 (2d Cir.1999)).

Plaintiffs contend that the facts pled must be considered together, not separately, and claim that when viewed together, the facts alleged in the CAC are sufficient to give rise to a strong inference of scienter. Plaintiffs argue that circumstantial evidence is a key method in which to plead scienter, and maintain that the following allegations should be considered in the mix: a) the claim that Autodesk acquired Discreet Logic using stock with an artificially inflated value, b) the claim that the individual defendants had knowledge of the alleged fraudulent scheme by virtue of their positions in the top level of management, c) the claim that Bartz and Herr received large bonuses as an inducement to inflate the value of the stock, and d) the claim that defendants allegedly began making false statements immediately after the August 1998 announcement of the impending acquisition of Discreet Logic, and that the revelation of the "truth" in May 1999 followed the last false statement by only a month.

■■■ Scienter includes knowledge of falsity. *See Ernst & Ernst v. Hochfelder* 425 U.S. 185 199, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining "scienter" as "a men-

tal state embracing intent to deceive manipulate, or defraud"). While it is true that such knowledge may be inferred from a combination of circumstances, plaintiffs' allegations in this case are not sufficient to state a claim. Plaintiffs allege no factual basis to support their assertion that defendants received or possessed information that was at odds with the statements they are alleged to have made publicly. Nor do plaintiffs allege any statements by any witnesses that they told any of the defendants the "true facts" before the allegedly false statements were made.

With regard to the acquisition of Discreet Logic with Autodesk stock plaintiffs argue that the completion of an offering at a lower price will serve as a basis to infer a strong inference of scienter. They cite a pre-PSLRA case from the Second Circuit, *In re Time Warner Securities Litigation*, 9 F.3d 259 (2d Cir.1993), which is not persuasive. They also cite two pre-PSLRA district court cases, plus two district court cases (one from Georgia, one from Pennsylvania) applying the PSLRA requirement for pleading scienter, but without the benefit of an interpretation of the standard from their respective circuits. In both of those decisions, the courts essentially ruled that allegations that the defendants knowingly made false and misleading statements in order to inflate the value of the company's stock to enable the company to make an acquisition that it otherwise would not have been able to make could be considered as inference of scienter. However, the key is "knowingly made false statements." In this case, by contrast, plaintiffs have not adequately pled that defendants knowingly made false statements, and therefore the inference cannot attach.

■■■ With regard to the presumed insider knowledge of the individual defendants, plaintiffs allege generally that "[b]ecause of their top executive positions with Autodesk, and involvement in the day-to-day management of its business and these issues, Bartz. Herr, and Tsingos actually

knew the adverse non-public information about the slowing sales of the R14." ¶ 34. But they provide no specifics about the alleged adverse non-public information. Defendants are correct in their argument that plaintiffs must do more than allege that these key officers had the requisite knowledge by virtue of their "hands on" positions, because that would eliminate the necessity for specially pleading scienter, as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position.

Plaintiffs assert that defendants knew that sales of the R14 were declining because of the internal reports they reviewed. Plaintiffs refer generally to reports generated on a weekly basis by Autodesk's finance department. *See* ¶ 24. According to plaintiffs, these include sales reports, order reports, backlog reports, "revenue cycles and trends" reports, "allowance and general reserve" reports, and "monthly and pending danger" reports. Plaintiffs claim that all these reports were circulated to Bartz, Herr, and Tsingos.

■ Plaintiffs make no specific allegations, however, about the contents of the reports or about how the contents contradicted defendants' public statements. Moreover, plaintiffs do not explain how they know what was in the reports. Nor do they quote from the reports or provide any factual basis for their claim that such reports were issued. They merely allege that sales were declining, and that there were reports—implying that information regarding declining sales must have been contained in those reports. The allegations in the CAC are insufficient in this regard because Rule 9 and the PSLRA require that plaintiffs provide details regarding how they obtained the reports, who produced the reports, and specifically what information the reports contained. *See Silicon Graphics,* 183 F.3d at 985. Under Ninth Circuit law, vague allegations of information contained in internal corporate reports are not adequate to raise a

strong inference of deliberate recklessness. "[A]llowing [plaintiffs] to go forward with a case based on general allegations of 'negative internal reports' would expose virtually all public companies to potential litigation." *Id.* at 983.

■ With regard to the allegation that the individual defendants were motivated *to engage in fraud by the prospect of* receiving large bonuses, defendants are correct in arguing that "motive and opportunity" (standing alone) has been rejected in the Ninth Circuit as a means of alleging scienter. *See id.* at 979. Most of the cases cited by plaintiffs to support the bonuses-as-motive claim originate in the Second Circuit, which has not rejected the "motive and opportunity" standard. Plaintiffs cite no Ninth Circuit opinions to support their position.

■ Finally, with regard to the timing of the allegedly false statements, this factor may prove relevant when considered in conjunction with specific information indicating conscious behavior or knowledge of falsity. By itself, however, it does not create a strong presumption of deliberate recklessness.

b. Claims against the individual defendants

■ Plaintiffs seek to have the individual defendants found liable for all of the alleged false and misleading statements, under the "group-published information" doctrine. Under the "group-published information" doctrine, a plaintiff can plead fraud by corporate officers based on statements in "group published information," which includes prospectuses, registration statements, annual reports, press releases, and 10–Q filings. *See Wool,* 818 F.2d at 1440. The doctrine does not apply to analysts' reports or oral remarks made by others; in addition, the allegations must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA. *See Copperstone v. TCSI Corp.,* 1999 U.S. LEXIS 20978 *53

(N.D.Cal., Jan. 14, 1999). For claims against corporate insiders, a plaintiff must allege that the defendants were involved in the preparation of the allegedly misleading statement. *See In re Oak Technology Securities Litigation,* 1997 WL 448168 *10–11 (N.D.Cal. Aug. 1, 1997).

Plaintiffs allege that defendants were privy to adverse, non-public information, based on their positions. They also allege that defendants were participants in the day-to-day corporate activities of Autodesk. They do not, however, allege that the individual defendants were directly involved in the preparation of the allegedly misleading statements. Nor do plaintiffs specify *which* of the allegedly misleading statements provide the basis for the application of the "group published information" doctrine. The "group-published information" doctrine applies to written documents originating with the company, such as press releases, prospectuses, and SEC filings. By definition, it does not apply to third-party reports, such as reports issued by analysts; transcripts of interviews with company officers or directors; or reports of oral representations made by officers or directors.

The only documents identified by plaintiffs in the "Misleading Statements" section of the complaint which could fall under the group-published doctrine are the three Autodesk press releases, two of which are not even clearly identified by plaintiffs as press releases in the complaint. *See* ¶¶ 47–55. That leaves one press release, (the 3/9/99 press release ¶ 63) to which the doctrine might apply, if it is found that it contains some false or misleading information.

### C. Piper Jaffray's Motion to Dismiss

Piper Jaffray argues that plaintiffs' only allegation with regard to Piper Jaffray is that its analyst, Hany Nada, "knew" that information he had received from Autodesk and which he repeated in six research reports issued between September 1998 and April 1999 was false. Piper Jaffray contends that all the arguments made by the Autodesk defendants apply with regard to the claims against Piper Jaffray—namely, that plaintiffs have failed to allege misrepresentation and scienter with the particularity required by Rule 9 and the PSLRA. Piper notes that plaintiffs have not pled falsity, scienter, materiality, reliance, causation, or damage with regard to any statement made by Piper.

The court finds that the same deficiencies exist with regard to the claims against Piper Jaffray as discussed above with regard to the Autodesk defendants. Unless plaintiffs are able to remedy the deficiencies in the complaint, they cannot allege fraud against Piper Jaffray based on the same allegations in that defective complaint.

### D. Leave to Amend

As stated at the hearing, plaintiffs will be given leave to amend the complaint in conformity with Rule 9 and the PSLRA. To reiterate, with regard to alleging falsity, "the statement of the claim must ... aver with particularity the circumstances constituting the fraud." *GlenFed,* 42 F.3d at 1545. A plaintiff must set forth more than the neutral facts—the time, place, and content of an alleged misrepresentation—necessary to identify the transaction. "The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement complained of was false or misleading." *Id.* at 1548. This falsity requirement can be satisfied "by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to defendants." *Id.* at 1549. In addition, under the PSLRA, plaintiffs are required to specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading.

The PSLRA also requires that the complaint shall, with respect to each alleged

unlawful act or omission, state "with particularity" facts giving rise to a strong inference that the defendant acted with the required state of mind. The Ninth Circuit has interpreted this requirement to mean that the complaint must allege facts that "create a strong inference of at a minimum, *'deliberate or conscious recklessness.'* " *Silicon Graphics,* 183 F.3d at 979 (emphasis added). In other words, it is no longer sufficient for plaintiffs to allege intent in terms of mere "motive and opportunity" or simple "recklessness." *Id.; see also id.* at 985 (it is not enough for a plaintiff to state facts giving rise to a "mere speculative inference" of delberate recklessness, or even "a reasonable inference" of deliberate recklessness.) In addition, in order to plead "with particularity," a plaintiff must "provide all the facts forming the basis for [his or her] belief in great detail." *Id.* at 983–84.

Accordingly, plaintiffs shall amend the complaint as follows: Separately, for *each* alleged false or misleading statement, plaintiffs shall

1. State the false or misleading statement;

2. State whether the statement was written or oral;

a. If the statement was written, identify the document in which it appeared— that is, provide the title and author of the document, the date it was prepared and, if not a publicly-available document, name of the person or persons who reviewed it;

b. If the statement was oral, state when and under what circumstances the statement was made, and by whom; if allegation regarding an oral statement is not made on personal knowledge, state with particularity all facts upon which plaintiffs formed the belief that one or more of the defendants made the statement at the time and place at which it is alleged to have been made.

3. State why the statement was false or misleading at the time it was made and state with particularity all facts upon which plaintiffs formed the belief that the statement was false or misleading;

a. If plaintiffs allege that the falsity of the statement is shown by conflicting information in internal reports, identify the report (title, author, date prepared recipient(s)) and indicate the portion of the report that contradicts the false or misleading statement;

b. If plaintiffs allege that the falsity of the statement is shown by contemporaneous information inconsistent with a particular statement, state with particularity what the contemporaneous information was, what the source of the information was, who had the information, and how plaintiffs learned of the information.

4. State particular facts giving rise to a strong inference of a degree of recklessness that strongly suggests actual intent to deceive;

a. If plaintiffs allege that defendants received or possessed documents or information that was at odds with the alleged false or misleading statement, state all the relevant facts supporting this belief;

b. If plaintiffs allege that the information was contained in documents, state the title, date, and contents of such documents (with particularity), the identity of the person or persons who drafted such documents, the identity of the person or persons who reviewed such documents, how plaintiffs learned of the existence of the documents, and how plaintiffs know that defendants received these documents;

c. If plaintiffs allege that the information was in a form other than written, state the source or sources of their information (how they learned of this information allegedly possessed by defendants) and how they know that the defendants possessed this information;

5. With regard to allegations concerning the liability of the individual defendants for "group-published" information, plaintiffs must indicate the statements that they contend fall under the doctrine.

## CONCLUSION

In accordance with the foregoing, the motions of the Autodesk defendants and Piper Jaffray to dismiss the complaint for failure to state a claim are GRANTED. The Second Consolidated Amended Complaint shall be filed no later than December 20, 2000. Any motions to dismiss shall be filed and served no later than January 24, 2001; the opposition to the motions shall be filed and served no later than February 21, 2001; and any reply to the opposition shall be filed and served no later than March 7, 2001. The court will advise the parties thereafter if a hearing is necessary.

This order fully adjudicates the motions listed at Nos. 28 and 35 on the clerk's docket for this case.

**IT IS SO ORDERED.**