**Sam WIETSCHNER, individually and on behalf of all other similarly situated, Plaintiffs,**

v.

**MONTEREY PASTA COMPANY, R. Lance Hewitt, and Stephen Brinkman, Defendants.**

**No. C 03–0632 MJJ.**

United States District Court, N.D. California.

Nov. 4, 2003.

Peter A. Binkow, Lionel Z. Glancy, Michael M. Goldberg, Glancy & Binkow LLP, Los Angeles, CA, J. Allen Carney, Little Rock, AR, Joshua M. Lifshitz, Peter D. Bull, Bull & Lifshitz, LLP, New York, NY, for Plaintiff.

David Banie, David Priebe, Gray Cary Ware & Freidenrich LLP, East Palo Alto, CA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS

JENKINS, District Judge.

### INTRODUCTION

Before the Court is Defendant Monterey Pasta Company ("Monterey Pasta"), R. Lance Hewitt and Stephen Brinkman's[1] Motion to Dismiss a federal securities fraud action brought against them by a class consisting of all persons who purchased or otherwise acquired Monterey Pasta stock between July 11, 2002 and December 16, 2002. Defendants seek an Order dismissing the Amended Complaint with prejudice under the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("Reform Act" or "PSLRA") and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the following reasons, this motion is GRANTED with leave to amend within twenty (20) days of the filing of this Order.

### FACTUAL ALLEGATIONS

This motion arises from an Amended Complaint alleging securities fraud in violation of section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder against all Defendants, and violation of section 20(a) of the Securities Exchange Act against two individual defendants who are corporate officers. The Complaint is brought on behalf of a class consisting of all persons who purchased or otherwise acquired Monterey Pasta stock between July 11, 2002 and December 16, 2002. The Complaint alleges that during the class period Defendants Monterey Pasta; R. Lance Hewitt, Chief Executive Officer, President and Chairman of the Board; and Stephen Brinkman, Chief Financial Officer, Vice President and a Director of the company, violated federal securities law by misrepresenting material facts about Monterey Pasta's business, operations and management during the class period and that class Plaintiffs were damaged thereby.

Monterey Pasta is a Delaware Corporation with its principal place of business in Salinas, California. The company is a producer and distributor of refrigerated gourmet pastas, soups, gnocchi, sauces, pizzas, salsas, dips and other foods to restaurants and grocery stores. The company markets and sells its products primarily through grocery and club stores throughout the United States, Canada, the

---

1. When referred to separately, Defendants Hewitt and Brinkman will be referred to as "Individual Defendants" throughout this memorandum. The three Defendants, Monterey Pasta, Mr. Hewitt and Mr. Brinkman, will be collectively referred to hereinafter as "Defendants."

Caribbean, Latin American, and Asia–Pacific regions. The company distributes its products through either "direct store delivery" or common carrier. Among Monterey Pasta's biggest customers are Costco, accounting for approximately 43% of the company's net revenue in 2002, and Sam's Club and Wal–Mart Supercenters, accounting for another 31% of net revenue in 2002.

Plaintiffs allege that throughout the class period, approximately coinciding with the third and fourth fiscal quarters of 2002, Defendants issued numerous false statements concerning the company's financial performance and future prospects. Plaintiffs specifically challenge statements made in press releases issued on July 11, July 29, July 30, September 4, and October 31, 2002 and statements made in an SEC Form 10–Q filed on November 12, 2002. Plaintiffs assert that Monterey Pasta claimed to be a company with substantial growth potential and efficient operating procedures, and that it enticed investors by reporting earnings growth in consecutive quarters without disclosing adverse known information. Plaintiffs allege that Defendants failed to disclose that a major customer had adopted a new pilot purchasing program which negatively impacted the Company's sales and earning growth both in the short and long term, and failed to disclose that the company's sales tactic of "channel stuffing" had inundated the market and that as a result the company would not be able to sustain continued earnings growth.[2]

Representative of Plaintiffs' allegations is July 11, 2002, when Monterey Pasta issued a press release in which it revised sales revenue estimates for the quarter from ten to fifteen percent growth down to three percent growth over the prior year. The company noted a "significant reduction in order volume from [a major customer] for nearly four weeks" but stated that "[t]his interruption has since been rectified and orders have resumed at more normal levels since late June. However, we do not feel it is necessary to revise our previous earnings estimate." (Compl.¶ 35.) Plaintiffs assert that this and other statements made in the press release were false and misleading because the company knew at the time the statements were made that the sales and earnings projections were unreasonable and lacking in reasonable basis. Plaintiffs contend that sales from the company's two major customers actually continued to decline and the company engaged in an aggressive campaign to over-distribute product in early July 2002 to create an image of sales and earning growth.

Also representative is Defendants' September 4, 2002 press release, in which the company admitted to sales below expectations but stated that it was "optimistic" about earnings of $.31 to $.32 for the year. Plaintiffs contend that such statements were false and misleading when made or lacked a reasonable basis because they did not disclose a continued decline in demand for product due to trends and channel stuffing.

On December 17, 2003, Monterey Pasta issued a press release in which it announced downward revision of 4Q02 sales revenue from projections of twelve to fifteen percent down to a five percent increase over the prior year, attributing the

---

2. Although Plaintiffs label this practice in a number of ways throughout the Amended Complaint, in essence Plaintiffs argue that Defendants engaged in the practice of "channel stuffing." Channel stuffing occurs when a distributor oversupplies inventory to artificially inflate sales, which will then subsequently drop as the distributors no longer make orders while they deplete their excess supply. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir.1998).

decline to weak sales to the company's second largest customer. The press release stated that "[t]he problem with this customer really began in June concurrent with the inception of a new pilot purchasing program" which created significant variability in weekly orders. After the program was suspended by the customer in November, orders were reduced to almost insignificant amounts for a period of two weeks. Following the December 17, 2002 announcement, Monterey Pasta stock fell 37.8%, down to $4.26 per share. Plaintiffs allege that Monterey Pasta stock had traded at artificially inflated prices throughout the class period, that Plaintiffs relied on the integrity of the market price in purchasing the stock, and that the fall in stock price and resulting damage to Plaintiffs was caused by Defendants' deception throughout the class period.

Plaintiffs allege that Defendants knew that the challenged statements were materially false and misleading when made, knew that the challenged statements or documents would be disseminated to the public, and knowingly participated or acquiesced in the issuance of the statements or documents. They further claim that Individual Defendants, because of their positions within the company, had access to the undisclosed information about the company's business operations, trends and prospects. Plaintiffs refer to Defendants' corporate Expandable MRP system, whereby Defendants are provided with immediate and complete financial information on the company, apparently as some proof of Defendants' scienter. Plaintiffs also contend that individual defendants Hewitt and Brinkman profited from Defendants' deception by selling shares at inflated prices before disclosing material adverse information about Monterey Pasta's sales and earnings, and that this is further evidence of scienter. Finally, Plaintiffs assert violations of generally accepted accounting principles ("GAAP"), claiming that Monterey Pasta failed to properly report financial results for 3Q02, as further support for their securities fraud allegations.

## JUDICIAL NOTICE

In addition to the Motion to Dismiss the Amended Complaint, Defendants have filed a Request for Judicial Notice, and ask the Court to notice a number of documents and two "matters of common knowledge." Before beginning its analysis of the Motion to Dismiss, the Court will discuss this Request for Judicial Notice in order to define the scope of information the Court is considering in the Motion to Dismiss. Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy can not reasonably be questioned."

## I. Documents Explicitly Referenced in the Complaint

■ Defendants first ask the Court to take judicial notice of specified press releases and SEC filings explicitly referenced in the Amended Complaint under the "incorporation by reference" doctrine. This doctrine permits the Court to consider documents alleged in a complaint and whose authenticity no party questions, but which are "not physically attached to [plaintiffs'] pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). Here, this includes press releases dated July 11, July 29, July 30, September 4, October 31, and December 17, 2002, as well as Monterey Pasta's 3Q02 Form 10–Q, all of which are attached to the Declaration of David Banie and explicitly referenced in Plaintiffs' Complaint. Plaintiffs do not dispute the authenticity of any of these documents, or claim that Monterey Pasta's documents

contain errors. Absent such an argument, incorporation under *Branch* is warranted.

## II. Documents Implicitly Relied on by the Complaint

 Defendants also ask the Court to take judicial notice of several documents necessary to Plaintiffs' allegations, even if not explicitly referenced in the Complaint. These include SEC Forms 4 filed on behalf of the two Individual Defendants; Monterey Pasta's SEC Form 10–K for the period ending December 28, 2002; and press releases from March 25 and September 3, 2002 and January 9, 2003 addressing Mr. Hewitt's retirement and Mr. Williams' hiring.

On a Motion to Dismiss, documents crucial to the plaintiff's claims but not explicitly incorporated in a complaint can be noticed in order to prevent a plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998). On this basis, the Court takes judicial notice of Mr. Hewitt and Mr. Brinkman's SEC Forms 4 and the SEC Form 10–K in that they are clearly, if indirectly, referenced in the Complaint as integral to the stock sale allegations made in the Complaint. The press releases from March 25 and September 3, 2002 and January 9, 2003 discussing Mr. Hewitt's retirement and Mr. Williams' hiring may also be noticed on this basis.

## III. Matters of Common Knowledge

 Finally, Defendants ask the Court to judicially notice of two matters of "common knowledge." *See Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir.1977) (courts "may take judicial notice of facts of 'common knowledge' in ruling on a motion to dismiss"). Defendants first ask the Court to notice that Monterey Pasta products are perishable, in light of Plaintiffs' admission that the products are refrigerat-ed. *See* Compl. ¶ 2, 25. Because it is well known in the community that refrigerated goods are generally perishable, it appears that the Court may notice this fact to the extent that it is relevant. Defendants also ask the Court to notice certain revenue numbers reported by Wal–Mart and Costco, asserting that the size of large public companies is a matter of public knowledge. Although it may be common knowledge that Walmart and Costco are "large" corporations, specific revenue numbers and the information included in these companies' SEC Forms 10–K are not matters of common knowledge, are not sufficiently relevant to the allegations in the Complaint, and will not be judicially noticed for purposes of this Motion to Dismiss.

## LEGAL STANDARDS

### 1) *Rule 12(b)(6)*

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for either lack of a cognizable legal theory or the pleading of insufficient facts under an adequate theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984). When deciding upon a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6), a court must take all of the material allegations in plaintiff's complaint as true, and construe them in the light most favorable to plaintiff. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). Moreover, a complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Id.*

In the context of a motion to dismiss, review is limited to the contents in the complaint. *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir.1995). When matters outside the pleading are presented to and accepted

by the court, the motion to dismiss is converted into one for summary judgment. Where such a conversion takes place, all parties must be given an opportunity to present all material made pertinent to such a motion by Rule 56. *In re Pacific Gateway Exchange, Inc. Sec. Lit.,* 169 F.Supp.2d 1160, 1164 (N.D.Cal.2001); *see also* Fed.R.Civ.P. 12(b). However, matters properly presented to the court, such as those attached to the complaint and incorporated within its allegations, may be considered as part of the motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989).

Where a plaintiff fails to attach to the complaint documents referred to in it, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support plaintiff's claim. *See Pacific Gateway Exchange,* 169 F.Supp.2d at 1164; *Branch v. Tunnell,* 14 F.3d 449, 450 (9th Cir.1994), *cert denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Thus, the district court may consider the full texts of documents that the complaint only quotes in part. *See In re Stac Electronics Sec. Lit.,* 89 F.3d 1399, 1405 n. 4 (1996), *cert denied,* 520 U.S. 1103, 117 S.Ct. 1105, 137 L.Ed.2d 308 (1997). This rule precludes plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.,* 146 F.3d 699, 705 (9th Cir. 1998).

**2)** *Section 10(b) and Rule 10b–5*

Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as

the [SEC] may prescribe." 15 U.S.C. § 78j(b).

Rule 10b–5 makes it unlawful for any person to use interstate commerce

(a) To employ any device, scheme, or artifice to defraud.

(b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5

 To be actionable under section 10(b) and Rule 10b–5, a plaintiff must allege (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) on which the plaintiff justifiably relied; (5) that proximately caused the alleged loss. *See Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir.1999). Additionally, as in all actions alleging fraud, plaintiffs must state with particularity the circumstances constituting fraud. Fed. R.Civ.P. 9(b).

**3)** *Section 20(a)*

 Section 20(a) of the Securities Exchange Act provides derivative liability for those who control others found to be primarily liable under the Act. *In re Ramp Networks, Inc. Sec. Lit.,* 201 F.Supp.2d 1051, 1063 (N.D.Cal.2002). Where a plaintiff asserts a section 20(a) claim based on an underlying violation of section 10(b), the pleading requirements for both violations are the same. *Id.*

### 4) *Private Securities Litigation Reform Act*

In 1995, Congress enacted the Private Securities Litigation Reform Act to provide "protections to discourage frivolous [securities] litigation." H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess. at 32 (1995) (Nov. 28, 1995). The PSLRA strengthened the pleading requirements of Rules 8(a) and 9(b). Actions based on allegations of material misstatements or omissions under the PSLRA must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

The PSLRA also heightened the pleading threshold for causes of action brought under Section 10(b) and Rule 10b–5. Specifically, the PSLRA imposed strict requirements for pleading scienter. A complaint under the PSLRA must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The Ninth Circuit, in interpreting the PSLRA, has held that "a private securities plaintiff proceeding under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc.*,

183 F.3d 970, 974 (9th Cir.1999). If the complaint does not satisfy the pleading requirements of the PSLRA, upon motion by the defendant, the court must dismiss the complaint. *See* 15 U.S.C. § 78u–4(b)(1).

### ANALYSIS

Defendants move the Court to dismiss Plaintiffs' Amended Complaint with prejudice pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA" or "Reform Act") and Federal Rules of Civil Procedure 9(b) and 12(b)(6) on several grounds. Defendants argue that: 1) Plaintiffs fail to plead any facts supporting their information and belief allegations as required by the Reform Act; 2) Plaintiffs' allegations of "channel stuffing" are irrelevant to the claim and impossible; 3) the Amended Complaint fails to plead scienter; and 4) the accounting fraud claims can not be brought under Rule 10b–5 on the facts alleged.[3]

### I. Lack of Factual Support for Allegations in the Complaint

■■■ "Under the PSLRA, Plaintiffs pleading on information and belief must 'state with particularity all facts on which that belief is formed.'" *In re Autodesk, Inc. Sec. Lit.*, 132 F.Supp.2d 833, 839 (N.D.Cal.2000) (quoting 15 U.S.C. § 78u–4(b)(1)). The Ninth Circuit has interpreted this statutory language to mean that a plaintiff "must provide a list of all relevant

---

**3.** Defendants also argue that the Safe Harbor provisions of the Reform Act bar claims based on Defendants' forward looking statements. However, the Court does not reach the relatively fact-intensive issues related to whether there exists meaningful cautionary language within Monterey Pasta's FY2001 Form 10–K and 1Q02 Form 10–Q sufficient to dispose of any or all of Plaintiff's claims because the pleading at issue is infirm on a number of other grounds. However, the Court notes that a strong argument can be made that

Congress did not intend to allow safe harbor cautionary statements to be incorporated by reference into separate written forward-looking statements not filed with the SEC. *See* 141 Cong. R. H13692, H13703 (Nov. 28, 1995). As such, Defendants are advised to consider the propriety of requesting judicial notice of the above-referenced documents in support of any subsequently filed motion to dismiss wherein the protections of the safe harbor provisions of the Reform Act are at issue.

circumstances in great detail." *In re Silicon Graphics Sec. Lit.*, 183 F.3d 970, 984 (9th Cir.1999). "It is irrelevant whether a plaintiff uses the phrase 'information and belief' when alleging false representations because allegations of misrepresentations not made on personal knowledge are presumed to have been made on information and belief." *Id.* Additionally, although reliance on an anonymous source is not per se improper under the PSLRA, allegations attributed to an unnamed source must be "accompanied by enough particularized detail to support a reasonable conviction in the informant's basis of knowledge." *In re Northpoint Communications Group, Inc., Sec. Lit.*, 221 F.Supp.2d 1090, 1097–98 (N.D.Cal.2002). Therefore, the first step in surviving a motion to dismiss under the PSLRA is to plead a manipulative or deceptive practice with sufficient particularity to meet this standard.

■ Defendants contend that the Complaint must be dismissed because Plaintiffs plead on information and belief and rely on only one source, an anonymous Director of Quality Assurance in charge of production who is not alleged to have any basis for first-hand knowledge about the sales, forecasts, marketing, customer relationships, or public statements discussed in the Complaint. The Complaint gives no details as to the nature of the unnamed source's job duties, other than that he was "in charge of production," nor does the Complaint provide any detail as to how the witness came to learn much of the information attributed to him. For example, the anonymous source states that "the Company's aggressive third quarter sales efforts were authorized by defendant Hewitt" but offers no explanation as to how the source knew of such authorization by Mr. Hewitt. (Compl.¶ 30). Similarly, the source claims that Monterey Pasta "continually overshipped product just to keep shipping and revenue numbers up" but does not include detail as to how the witness would have

this information or what caused him to believe this. *Id.* Further, the source claims that 3Q02 shipments were "way over what customers needed" and had the "effect of flooding their distribution warehouses," but does not explain how he would know what the customer needed or the state of their distribution warehouses. *Id.* Without more information, this Court has no basis for relying on the witness' statements as sufficient to draw an inference of fraud under the requirements of the PSLRA. *See Northpoint*, 221 F.Supp.2d 1090, 1097–98 (N.D.Cal.2002).

Plaintiffs contend that they have described the witness' title and job description adequately to create a strong inference that he had "personal knowledge regarding the inventory of the company." (Opp.13:17–19). Even if it was true that a Director of Quality Assurance could be assumed to have personal knowledge of inventory of the company and/or its customers, which is by itself a dubious proposition, knowledge of "inventory" is an insufficient basis for many of the statements attributed to the witness. Although there are some statements from which an adequate basis for knowledge can be inferred, for example where the unnamed source claims to have personally questioned the rationale for mass production and why an end-cap promotion had not occurred, these statements are thinly scattered throughout what otherwise appears to be unfounded and sometimes unintelligible speculation.

Indeed, the unnamed witness' statements quoted by Plaintiffs appear to indicate such speculation: the witness is quoted as saying that when "you're shipping 20,000—20,000—20,000, and all of a sudden you ship 100,000 without a major promotion or new product launch … you have to scratch your head and wonder why they would do that." (Compl.¶ 31). The witness clearly had no basis for knowledge

of the reasoning behind the varying shipments when they were made, and offers no further insight in the Complaint. As another example, the witness is quoted as saying, "look at the order of events, we did the press releases and hitting [sic] sales number and subsequently we started seeing a lot of stock being sold and then in a short period of time this hits ... as far as the glut." (Compl.¶ 33). Such statements indicate that the source noticed and wondered about occurrences he observed at Monterey Pasta, but do not demonstrate any knowledge as to the rationale behind the company's decisions. Additionally, they offer the Court no insight into the time frame or context in which the statements were made. As such, the witness offers little in the way of affirmative allegations of wrongdoing and much in the way of speculation. Without more, the Court has no basis from which to gauge reliability of the witness' information or to draw an inference of fraud.

Plaintiffs contend that they also rely on Monterey Pasta's public filings, internal documents and inside information in addition to the unnamed witness, and that even if the Court finds the unnamed witness to be unreliable, Plaintiffs have "stated numerous other facts to support their claims." (Opp.14:1–7). However, this is not so. Plaintiffs have not directly referred to or attached any internal documents or information, other than the quotations from the unnamed Director of Quality Assurance which, as discussed above, are insufficient. Without more information about any internal documents, their contents, and who had access to such inside information, the Court can not consider mere mention of them sufficient to plead a securities fraud claim. *See In re Silicon Graphics Sec. Lit.*, 183 F.3d 970, 985 (9th Cir.1999) ("a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well

as such facts as may indicate their reliability"); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir.2002).

As for public filings, Plaintiffs have referred explicitly and implicitly to many press releases and SEC filings in the Complaint, and the Court has taken judicial notice of them pursuant to Defendants' request. However, the documents alone are insufficient to support Plaintiffs' claims. The documents referenced do not show any unusual movement of inventory to support a "channel stuffing" theory, do not alone lend support to contentions of misrepresentation or omission of material facts regarding the financial state of the company, and do not support Plaintiffs' allegations of scienter reaching intentional or reckless misstatements or omissions on the part of Monterey Pasta or the Individual Defendants.

Because Plaintiffs have not provided the Court with sufficiently particularized detail to support a reasonable conviction in the unnamed informant's basis of knowledge for many, if not all, of the facts testified to, and because the allegations in the Complaint are largely unsupported by other sources of information mentioned in the Complaint, Plaintiffs have not alleged any deceptive practices sufficient for a securities fraud claim. Therefore, the Court could grant the motion on the basis of insufficient factual allegations.

## II. Insufficient Allegations of Channel Stuffing

 Defendants also argue that Plaintiffs' claims of false forecasting must be dismissed because channel stuffing is not improper or deceitful and because channel stuffing is impossible under the facts alleged. However, Plaintiffs counter that Defendants have misconstrued the Complaint in that the mainstay of the allegations is not channel stuffing, but instead is "an intricate ploy contrived by Defendants

to conceal adverse, internal information rendering Defendants' public statements false and misleading, while Defendants simultaneously engaged in channel stuffing to outwardly project an image of sales and earnings growth." (Opp.6:5–9). No matter how interpreted, Plaintiffs claims fail to properly show the required discord between Defendants' internal actions and knowledge and their public statements for a violation of sections 10(b) and 20(a).

The parties dispute the importance of the channel stuffing allegations made in the complaint. Defendants contend that there is nothing wrong with channel stuffing, and that such actions are not actionable in the Ninth Circuit. (Motion to Dismiss IV.B.1, citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998).) However, Plaintiffs claim that they are not alleging that channel stuffing by itself is actionable. Instead they seek to show that Monterey Pasta used channel stuffing to outwardly project a false image of sales and earnings growth when in reality Defendants knew this was not the case, and thus the statements made during the class period were false or misleading when made. (Opp.6:5–9).[4]

The Ninth Circuit has recently stated that "channel stuffing claims may have some probative value insofar as the channel stuffing was done so as to artificially inflate income, but there may also be other legitimate reasons for attempting to achieve sales earlier." *Broudo v. Dura Pharmaceuticals, Inc.*, 339 F.3d 933, 940 (9th Cir.2003). Courts in this district have almost uniformly rejected the idea that allegations of channel stuffing are sufficient to plead a securities fraud violation. *See, e.g., id.* (finding no fault with a district court's conclusion that the allegation of channel stuffing was insufficient for scienter); *Coble v. Broadvision Inc.*, 2002 WL 31093589 at *8 (Sept. 11, 2002, N.D.Cal.); *In re Ramp Networks, Inc. Sec.*, 201 F.Supp.2d 1051, 1077 (N.D.Cal.2002); *In re Splash Technology Holdings, Inc. Sec. Lit.*, 160 F.Supp.2d 1059, 1076 (N.D.Cal. 2001).

Indeed, the Ninth Circuit has referred to channel stuffing claims as "speculation made in hindsight." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998). Therefore, to the extent that Plaintiffs rely on a channel stuffing theory to support their claims that the challenged statements were false when made or that Defendants' acted with the requisite scienter, and even if Plaintiffs had plead sufficient factual information to indicate that channel stuffing indeed took place, which they have not, the channel stuffing allegations are insufficient for the Complaint to survive the motion to dismiss.[5, 6]

4. Thus, Plaintiffs appear to rely on channel stuffing as proof of scienter. To the extent that this is the case, the discussion in this section is also relevant to whether Plaintiffs have adequately plead Defendants' scienter. As discussed below, Plaintiffs' allegations of channel stuffing are insufficient as factual allegations or as proof of scienter to make a claim under the PSLRA.

5. Defendants also argue that the time line of events Plaintiffs have plead does not make sense with respect to the channel stuffing allegations. Plaintiffs allege that channel stuffing took place after the end of 2Q02 (*see* Compl. ¶ 38, 39), but that they rely on chan-

nel stuffing to support the theory that the statements made in a July 11, 2002 press release (which would pre-date the alleged channel stuffing) were false and misleading when made. Because the Complaint fails on other grounds, the Court declines to discuss in any length this potential pleading infirmity. However, if Plaintiffs attempt to amend the Complaint, any such temporal discrepancies should be adequately addressed.

6. Defendants also contend that it would be impossible for Monterey Pasta to "channel stuff" because its refrigerated goods are date-stamped and perishable. As such, Defendants could not intentionally oversupply inventory

## III. Insufficient Allegations of Scienter

Under the PSLRA, Plaintiffs must allege particular facts giving rise to a strong inference of the required state of mind. 15 U.S.C. § 78u–4(b)(2). For forward looking statements, the required state of mind is actual knowledge that the statement was false or misleading. 15 U.S.C. § 78u–4(c). For other statements, plaintiffs must "state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent ....the PSLRA requires plaintiffs to plead, at a minimum, particular facts giving rise to a strong inference of deliberate or conscious recklessness." *In re Silicon Graphics, Inc. Sec. Lit.*, 183 F.3d 970, 979 (9th Cir.1999). Where the pleadings are not sufficiently particularized or where, even taken as a whole, they do not raise a strong inference of scienter, a Rule 12(b)(6) dismissal is proper. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035, 1038 (9th Cir.2002).

Here, because Plaintiffs have not made clear exactly what statements they challenge and whether they are statements of present condition or forward-looking, and to give Plaintiffs the benefit of the doubt, the Court examines scienter under the lower standard, requiring Plaintiffs to allege specific facts and corroborating details that, looked at in total, create a strong inference of deliberate or conscious recklessness. Plaintiffs have not met this lower pleading requirement.

### A. Individual Defendants' Knowledge of Improper Sales Practices

Plaintiffs contend that corporate insiders Hewitt and Brinkman, individual Defendants in this lawsuit, were the two highest ranking officers at Monterey Pasta during the class period. They therefore contend that these individuals had "access to the adverse non-public information about the business, finances, markets and present and future business prospects ... via access to internal corporate documents, conversations or connections with corporate officers or employees, attendance at management meetings and committees thereof and/or via reports and other information provided to them in connection therewith." (Compl.¶ 65.)

Aside from this and similar blanket statements as to what Defendants knew or should have known, Plaintiffs fail to allege specifically what information these individuals, or anyone else at the company, actually acquired through "inside access." Other than the statements of the sole unnamed witness for whom no basis of knowledge was established, Plaintiffs have not alleged any particular facts relating to any of their allegations which could impute any knowledge or deliberate recklessness to the individual Defendants. This is clearly insufficient to establish a "strong inference" of scienter. *See, e.g. In re Read–Rite Corp. Sec. Lit.*, 335 F.3d 843, 848–49 (9th Cir.2003); *In re Splash Technology Holdings, Inc. Sec. Lit.*, 160 F.Supp.2d 1059, 1070, 1079 (N.D.Cal.2001) (finding such bald allegations of inside knowledge insufficient under the PSLRA).

Plaintiffs also mention an integrated management information system known as the Expandable MRP system, which provides Defendants with immediate and complete financial information and by which Defendants could closely monitor company operations. (Compl.¶¶ 26, 34.) Apparent-

---

in one quarter, thus supplanting sales in the next quarter while the oversupply is depleted, because the goods would spoil in the interim. Though it is true that this Court must draw all reasonable inferences from the Complaint al-

legations, including inferences unfavorable to Plaintiffs, *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir.2002), given the other infirmities it is unnecessary for the Court to draw such an inference here.

ly Plaintiffs believe that Defendants obtained material adverse information from this system, and that they intentionally or recklessly made false or misleading statements with knowledge of this information. However, Plaintiffs have not alleged through specific facts that either of the individual Defendants, or others in the company, had access to or looked at this information. They also have not alleged specifically what information the system would have provided had Defendants monitored it. For example, such a system might provide employees with information about when and where products were shipped, and such information might assist in corroborating the unnamed witness' statements and create a stronger inference of scienter. However, without more information, the Court can not infer any knowing or reckless falsity on the part of any of the Defendants. *See Lipton v. Pathogenesis Corp.,* 284 F.3d at 1035–36 (quoting *Silicon Graphics,* 183 F.3d at 985) (a "proper complaint which purports to rely on the existence of internal reports would at least contain some specifics form those reports as well as such facts as may indicate their reliability").

## B. Insider Sales

 Plaintiffs also rely on stock sales by Defendants Hewitt and Brinkman as indication of Defendants' scienter. Generally, stock sale allegations can not raise an inference of scienter unless Plaintiffs allege specific facts showing that the sales were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Silicon Graphics,* 183 F.3d at 986. Among the relevant factors for a court to consider are: 1) the amount and percentage of shares

sold by insiders; 2) timing of the sales; and 3) whether the sales were consistent with the insider's prior trading history. *Id.*

 Defendant Hewitt sold 30,000 shares of Monterey Pasta stock between August 6 and August 13, 2002 at $7.70 to $8.174 per share for gross proceeds of approximately $280,000. (Compl.¶ 42.) He then sold 5,000 shares at $7.578 per share on September 3, 2002, and 23,700 shares at $6.85 to $6.956 between November 18 and November 29, 2002. (Compl.¶ 44, 50.) Finally, between December 2 and December 16, 2002, Defendant Hewitt sold 31,515 shares at $6.85 to $7.038 per share. (Compl.¶ 51.) Defendant Brinkman sold 15,000 shares at $8.00 to $8.043 per share between August 15 and August 26, 2002. (Compl.¶ 43.) Plaintiffs do not allege the percentage, timing or sales history of Defendants. However, Defendants assert that Mr. Hewitt sold approximately 37.7 percent of his holdings, and Mr. Brinkman sold approximately 7.75 percent of his holdings during the class period.[7]

In light of the three factors above, these sales are not sufficiently suspicious to raise an inference of scienter. Mr. Brinkman sold a relatively low percentage of his shares at the end of a quarter. *See Ronconi,* 253 F.3d at 435 (suggesting that sales of 10–17% of holdings was not suspicious). Mr. Hewitt sold more shares, but given his pending retirement (Banie Decl. Exh 1) and the fact that he also sold a roughly proportional number of shares in the months leading up to the class period, (Banie Decl. Exh. 17–19) such sales are not sufficiently suspicious. *See In re K-tel International, Inc. Sec. Lit.,* 300 F.3d 881 (8th Cir.2002); *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 206 (1st Cir.1999) (it is

---

7. Although these percentages were not alleged in the Complaint, Plaintiffs do not object to these figures noted in Defendants' papers. The Court takes judicial notice of the press release and Forms 4 from which these numbers were calculated.

not uncommon for individuals leaving a company to sell shares).

Further, Plaintiffs state that both Defendants sold shares under individual SEC Rule 10b5–1 trading plans, which allows corporate insiders to set a schedule by which to sell shares over a twelve to fifteen month period. (Compl.¶ 41). This could raise an inference that the sales were pre-scheduled and not suspicious. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir.2002) (a court must consider all reasonable inferences to be drawn from this allegation, including one unfavorable to Plaintiffs).

### C. Plaintiffs' Scienter Allegations As a Whole

■■■■■ Additionally, this Court must consider whether the totality of Plaintiffs' scienter allegations, even though individually lacking, are sufficient to create a strong inference that Defendants acted with deliberate or conscious recklessness, if not actual knowledge. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir.2002). Here, the sum is no greater than its parts. Plaintiffs have failed to provide necessary detail regarding any corporate insider's knowledge or access to adverse information. Indeed, Plaintiffs have failed to provide detail as to the existence of any adverse information. Aside from part of a sentence quoted from an anonymous witness, the Complaint does not indicate how much product Defendants were shipping at any given time. The Complaint gives no indication of sales numbers at any time during, before or after the class period. Weak hints that because Mr. Hewitt and Mr. Brinkman were directors of Monterey Pasta they would have access to all corporate information, including adverse information that Plaintiffs claim existed but have not described in any detail, is insufficient. Even

coupled with the fact that both Individual Defendants sold stock during the class period, this is still clearly insufficient. Plaintiffs have failed to allege any factual basis, let alone "particular facts giving rise to a strong inference" that Defendants had the requisite state of mind to demonstrate a securities fraud violation.

### IV. Accounting Fraud Claims

■■■■ In the Complaint, Plaintiffs allege that Defendants violate GAAP and SEC rules by improperly reporting financial results for 3Q02 through failure to "reveal the magnitude of phantom sales and revenues achieved as a result of ... channel stuffing" as further support for the securities fraud allegations. (Compl. ¶ 52; Opp. 19:9–13). Plaintiffs base this claim on SEC Rule 4–01(a) of SEC Regulation S–X, codified at 17 C.F.R. § 210.4–01(a)(1), which states that "[f]inancial statements filed with the [SEC] which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate." Plaintiffs also rely on Item 303 of SEC Regulation S–K, codified at 17 C.F.R. § 229.303, because Defendants "failed to disclose the existence of known trends, events or uncertainties that they reasonably expected would have a material unfavorable impact on its operating results, or that were reasonably likely to result in the Company's liquidity decreasing in a material way." (Compl.¶ 57.) Finally, Plaintiffs rely on SEC Staff Accounting Bulletin Number 101, which requires that revenue from sales be disclosed separately on the face of an income statement.

However, as discussed above, Plaintiffs have failed to plead a proper factual basis for their channel stuffing allegations, and without proper allegations of channel stuffing there is no basis for Plaintiff's accounting fraud claims.[8] Additionally, the SEC

---

8. Indeed, it is doubtful that even an adequate-

ly supported channel stuffing allegation

regulations and bulletins relied on by Plaintiffs have no relevance to the statements made in press releases at issue in this case. Regulations S–K and S–X and Bulletin 101 do not govern statements contained in press releases because press releases are not required to be filed with the SEC. *See In re Cylink Sec. Lit.,* 178 F.Supp.2d 1077, 1086 (N.D.Cal.2001); 17 C.F.R. § 229.10. Therefore, the only possible "hook" for these regulations is the challenged 3Q02 SEC Form 10–Q. However, 17 C.F.R. § 229.303(a), governing reporting for full fiscal years, is inapplicable to this quarterly report. 17 C.F.R. § 229.303(b), which governs interim period reporting, does not include the requirement of section 303(a) to disclose certain "known trends," the requirement that Plaintiffs allege in the Complaint was breached.[9] (See Compl. ¶ 57.)

Further, even if Plaintiffs could demonstrate a breach of 17 C.F.R. § 229.303, this would not assist in stating a cause of action under section 10(b) for securities fraud. The standards for disclosure under section 10(b) differ from the standards for disclosure under 17 C.F.R. § 229.303. *See Alfus v. Pyramid Tech.,* 764 F.Supp. 598, 608 (N.D.Cal.1991) (breach of Item 303 "does not lead inevitably to the conclusion that such disclosure would be required under Rule 10b–5"). *See also Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293 (9th Cir. 1998); *In re VeriFone Sec. Lit.,* 11 F.3d 865, 870 (9th Cir.1993); *Oran v. Stafford,* 226 F.3d 275, 287–88 (3d Cir.2000). This appears to be true for Bulletin 101 as well, in that the language of the bulletin mirrors

that of section 303. Further, Bulletin 101 is one of many staff accounting bulletins which are not rules or interpretations of the SEC and do not have the force of law. *See Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

## V. Rule 20(a) Liability

Section 20(a) of the Securities Exchange Act provides derivative liability for those who control others found to be primarily liable under the Act. *In re Ramp Networks, Inc. Securities Lit.,* 201 F.Supp.2d 1051, 1063 (N.D.Cal.2002). Where a plaintiff asserts a section 20(a) claim based on an underlying violation of section 10(b), the pleading requirements for both violations are the same. *Id.*

 Here, Plaintiffs assert that Defendants Brinkman and Hewitt are liable under this section because of an underlying violation of section 10(b). (Compl.¶ 88.) However, because Plaintiffs have failed to adequately plead the underlying 10b–5 violation, the section 20(a) claims must be dismissed as well.

## VI. Dismissal Without Prejudice

 Leave to amend under Federal Rule of Civil Procedure 15 should be liberally granted. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear ... that the complaint could not be saved by amendment." *Eminence Capital v. Aspeon Inc.,* 316 F.3d 1048, 1053 (9th Cir.2003) (error to refuse leave to amend in a securities fraud case to

---

would be sufficient to show a section 303 violation. In a claim brought under sections 11 and 12(a)(2) of the Securities Exchange Act, the Ninth Circuit found that a channel stuffing allegation was insufficient to support a claim under 303(a), because the claim was "speculation made in hindsight." *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir.1998).

**9.** 17 C.F.R. § 229.303(b) does require a discussion of any material changes in those items specifically listed in section 303(a), including "known trends." However, Plaintiffs have not sufficiently alleged any "material change" in a "known trend" that would require disclosure under this provision either.

allow plaintiff to plead scienter). Here, it is possible that Plaintiffs could remedy their significant pleading defects in an amended complaint by adding detailed factual support for their allegations of false or misleading statements, and demonstrating that Defendants had the requisite scienter at the time the statements were made. The Court therefore grants dismissal without prejudice in order to allow Plaintiffs the opportunity to attempt to remedy the pleading defects if they choose to do so.

## CONCLUSION

After consideration of the Complaint and moving papers and upon hearing oral argument, in light of the heightened pleading standards of the PSLRA and the requirements of Federal Rule of Civil Procedure 12(b)(6), the Court hereby GRANTS Defendants' Motion to Dismiss the Complaint without prejudice.

**IT IS SO ORDERED.**