# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 06-20135

———

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 21, 2007**

Charles R. Fulbruge III
Clerk

CENTRAL LABORERS' PENSION FUND; ET AL

Plaintiffs

CENTRAL LABORERS' PENSION FUND

Plaintiff-Appellant

v.

INTEGRATED ELECTRICAL SERVICES INC; HERBERT ALLEN; WILLIAM W REYNOLDS; JEFFREY PUGH

Defendants-Appellees

———

Appeal from the United States District Court
for the Southern District of Texas

———

Before HIGGINBOTHAM, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Central Laborers' Pension Fund ("CLPF") appeals the district court's dismissal with prejudice of its securities fraud complaint against Integrated Electrical Services ("IES") and several of IES's executive officers for failure to meet the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  We AFFIRM.

## I. FACTS AND PROCEEDINGS

During the class period,[1] IES, a Houston-based publicly-traded company, provided electrical contracting services in the United States through a network of more than 40 subsidiary companies. Despite its extensive use of subsidiaries, which were managed regionally, IES held itself out as an integrated company and filed consolidated financial statements.

Starting in April 2003, IES made various statements expressing confidence in the company's financial status, and over the next 16 months the company's stock price generally increased. In early August 2004, IES publicly disclosed that it could not release its quarterly earnings numbers on time due to an ongoing evaluation of certain projects. Later in August 2004, the company acknowledged that "material weaknesses" in the company's internal controls might require restatement of prior financial figures. Ultimately, IES restated its financial results for three periods: fiscal year 2002, fiscal year 2003, and the first two quarters of fiscal year 2004.

In June 2005, Plaintiff CLPF, a stockholder, filed a consolidated amended class action complaint ("CAC") against IES, its President and CEO Herbert Allen, and two men who served as the company's CFO at different times, William Reynolds and Jeffrey Pugh, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act,[2] 15 U.S.C. §§ 78j(b) & 78t(a), as well as Rule 10b-5 promulgated thereunder. The CAC alleges that a number of false or misleading statements by IES regarding the company's financial condition caused an artificial inflation in the market price of IES's securities during the

---

[1] The class period is April 1, 2003, through August 13, 2004.

[2] Pugh was not sued under Section 10(b) and was instead only named as a "Control Person" pursuant to Section 20(a).

class period.[3] The allegedly false and misleading statements were distributed publicly through press releases, SEC filings, and "Company & Investment Profiles," which were company-created reports providing analysis about the company.

The defendants moved to dismiss the CAC under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing, inter alia, that the CAC did not meet the pleading requirements of the PSLRA. CLPF opposed the motion and included in its response a request to amend the CAC if the court deemed it insufficient to avoid dismissal. The district court granted the motion and dismissed the CAC with prejudice, implicitly refusing to grant CLPF leave to amend. Specifically, the court found that the CAC did not meet the particularity requirement as to scienter.

CLPF timely appealed and raised two arguments. CLPF argues that the CAC's allegations of scienter were articulated with sufficient particularity to defeat a motion to dismiss. Second, CLPF urges that the district court abused its discretion in refusing to permit amendment of the CAC.

## II. STANDARDS OF REVIEW AND APPLICABLE LEGAL STANDARDS

### A. Motion to dismiss

We review de novo a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). See Nathenson v. Zonagen Inc., 267 F.3d 400, 406 (5th Cir. 2001). We must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most

---

[3] The putative class includes:
all those who purchased or otherwise acquired the common stock of IES between April 1, 2003 and August 13, 2004, inclusive and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

favorable to the plaintiff. Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005). Nevertheless, "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." Id.

In order "[t]o state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege, in connection with the purchase or sale of securities[:] (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately [injured him]." Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006) (second and third alterations in original) (internal quotation omitted).

Under the PSLRA, a plaintiff alleging securities fraud must plead the substantive elements of the violation with particularity. Id. at 287. The PSLRA "appears to comport with this Court's relatively strict interpretation of Rule 9(b), which requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." ABC Arbitrage Plaintiffs Group v. Tchuruk, 291 F.3d 336, 350 (5th Cir. 2002) (internal quotation omitted). "[T]he PSLRA specifically provides in 15 U.S.C. § 78u-4(b)(1) . . . that, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Id. (internal quotation omitted). Failure to do so results in dismissal of the complaint. Id.

> In any private action arising under [the PSLRA] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2). Section 10(b) and Rule 10b-5 violations require proof that the defendant acted with scienter, which means "either intent or severe recklessness." Blackwell, 440 F.3d at 287. Severe recklessness is

> limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

Nathenson, 267 F.3d at 408 (internal quotation omitted).

The PSLRA did not, however, generally alter the substance of the scienter requirement for Section 10(b) and Rule 10b-5 claims. See Goldstein v. MCI WorldCom, 340 F.3d 238, 245 (5th Cir. 2003). This court also does not "require[] a plaintiff to present direct evidence of scienter in order to withstand dismissal of his securities claims. Allegations of circumstantial evidence justifying a strong inference of scienter will suffice." Id. at 246.

Furthermore, "[t]he strong-inference pleading standard does not license us to resolve disputed facts at this stage of the case." Barrie v. Intervoice-Brite, Inc., 397 F.3d 249, 258 (5th Cir. 2005). It does, however, permit the court to "engage in some weighing of the allegations to determine whether the inferences toward scienter are strong or weak." See Rosenzweig v. Azurix Corp., 332 F.3d 854, 867 (5th Cir. 2003). Importantly, the Supreme Court recently stated that "[t]o determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2510 (2007). The Court provided that "[t]he inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences. . . . Yet the inference of scienter

must be more than merely reasonable or permissible––it must be cogent and compelling, thus strong in light of other explanations." Id. (internal citations and quotations omitted). Accordingly, the Court held that a complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id.

B.     Refusal to permit amendment

This court reviews the district court's refusal to grant leave to amend the complaint for abuse of discretion. See Goldstein, 340 F.3d at 254. Federal Rule of Civil Procedure 15 favors permitting amendment; the district court's discretion, therefore, must be considered in this context. See Rosenzweig, 332 F.3d at 863.

## III.  DISCUSSION

A.     Motion to dismiss for failure to plead scienter with sufficient particularity

CLPF contends that it pleaded scienter with sufficient particularity to avoid dismissal based on a holistic examination of the various allegations taken in the light most favorable to it. CLPF alleged insider trading, GAAP violations, failure to fix an accounting error, the making of false statements about internal controls, and pervasive knowledge of accounting problems throughout IES.

This court must examine these allegations in toto when determining whether CLPF adequately pleaded scienter. Barrie, 397 F.3d at 260.

(1)    GAAP violations, public statements, and restatement of financials

The CAC describes IES's alleged GAAP violations in detail. CLPF urges that its assertions in the CAC regarding the accounting errors and internal controls at IES serve as strong circumstantial evidence of, at a minimum, recklessness as to senior management's ignorance of the problems at IES. See, e.g., Barrie, 397 F.3d at 263–64; In re: McKesson HBOC, Inc. Sec. Litig., 126 F.

6

Supp. 2d 1248, 1273 (N.D. Cal. 2000) ("[W]hen significant GAAP violations are described with particularity in the complaint, they may provide powerful indirect evidence of scienter. After all, books do not cook themselves."). However, GAAP violations, without more, do not establish scienter. Barrie, 397 F.3d at 263–64. The public statements and subsequent restatement due to GAAP violations provide some basis to infer scienter.

(2) Confidential sources

In the CAC, CLPF also points to statements by confidential sources. Confidential source statements are a permissible basis on which to make an inference of scienter. Tchuruk, 291 F.3d at 353.

There are two specific, direct allegations in the CAC suggesting that the defendants ignored the accounting problems at IES. First, a former IES network technician claimed that he overheard comments at headquarters about the company's accounting practices indicating that IES lacked the internal controls it repeatedly lauded and embraced a culture of financial manipulation that favored hitting financial numbers rather than accurate accounting. Second, a former senior vice president stated that Allen said that he did not want to know the details of a revenue issue so that he would not be liable. The CAC includes various other confidential witness accounts containing fewer details.

IES suggests that these confidential source statements are of no scienter value because they lack specific details, such as particular job descriptions, individual responsibilities, and specific employment dates for the witnesses, and that without such information there is an insufficient basis on which to evaluate the presented information. CLPF essentially retorts that these sort of details go to the weight accorded the statements rather than the validity of considering them in ruling on the motion to dismiss. See Tchuruk, 291 F.3d at 354 (noting that the court considers "each allegation for its particularization" value). We hold that CLPF's confidential source statements lack sufficient detail to credit

them as bases for a strong inference of scienter with respect to the particular allegations of fraud in the CAC.

(3)    IES officers' trading

CLPF also alleges that IES's officers' trading of IES stock permits a strong inference of scienter on the part of the officers. More specifically, CLPF argues that a strong inference of scienter is raised by the amount, timing, profit, and profits ratio to ordinary compensation of the stock sales.

Insider trading can be a strong indicator of scienter if the trading occurs at suspicious times or in suspicious amounts. See Rubinstein v. Collins, 20 F.3d 160, 169 (5th Cir. 1994). "Suspicious" in this context generally means that the "sales are out of line with prior trading practices or at times calculated to maximize personal profit." Abrams v. Baker Hughes Inc., 292 F.3d 424, 435 (5th Cir. 2002). Insider trading alone cannot create a strong inference of scienter, but it "may meaningfully enhance the strength of the inference of scienter." Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 368 (5th Cir. 2004) (internal quotation omitted).

CLPF points to trading by Allen, Reynolds, and non-defendants. IES contends that the sale assertions are insufficient because the CAC lacks information about the sellers' trading history, including prior sales patterns. In other words, IES's position is that the information regarding sales by Allen and Reynolds is meaningless unless it is placed in context with previous trades. See Ronconi v. Larkin, 253 F.3d 423, 435–37 (9th Cir. 2001) (stating that plaintiffs "must allege sufficient context of insider trading for us to determine whether the level of trading is 'dramatically out of line with prior trading practices'").

In this circuit, officer trading may give rise to an inference of scienter if it is unusual in timing or scope. Nathenson, 267 F.3d at 421. In other words, prior trading history does not need to be pleaded as a per se matter; instead, the court looks at the information that is pleaded and determines whether the timing or

8

scope is unusual. In doing so, the court must consider plausible nonculpable explanations for such officer trading, as well as inferences that favor CLPF. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2510 (2007).

(a)   Allen

During the class period, on March 4, 2004, Allen made a one-time sale of 30,000 IES shares for a profit of more than $225,000. Allen owned 734,400 shares prior to this sale and thereafter retained 704,400 shares. CLPF points out that the profit on this sale represented 43% of Allen's 2004 salary and argues that such a figure provides a strong inference of scienter. See In re: Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 277 (3d Cir. 2006) (noting that one relevant factor to the scope and timing of a sale is "whether the profits were substantial relative to the seller's ordinary compensation").

IES responds that Allen only sold 4% of his shares during the class period and urges that Allen's continued ownership of a large amount of stock compels an inference that he was not involved in a fraud scheme. In other words, the fact that Allen retained over 700,000 shares of IES stock indicates that he did not possess scienter regarding the alleged fraud, because otherwise he would have sold these shares before the price fell. In addition, in Suprema the sale at issue increased the defendants' incomes far more substantially than Allen's sale did. See id. at 278. The skeletal insider trading allegations against Allen do not contribute to an inference of scienter.

(b)   Reynolds

During the class period, Reynolds exercised 351,335 options for a profit of approximately $1.44 million. Reynolds left the company in March 2004 and retained only 19,781 options as of April 2004. CLPF contends that these sales were suspicious in scope. IES offers innocent explanations for the sales.

First, Reynolds resigned from IES in March 2004, near the end of the period when his relevant stock sales occurred. IES asserts that it is not unusual

for a corporate officer to sell his stock shortly before resigning. Second, IES urges that financial obligations created by a divorce decree, of which IES asks the court to take judicial notice, provide a non-suspicious explanation for the stock sales. Third, IES contends that Reynolds sold much of the stock pursuant to a 10b5-1 plan, rendering the sales non-suspicious.[4]

CLPF makes four arguments in response. First, it asserts that Reynolds's retirement near the time of sale is suspicious rather than non-suspicious. See Suprema, 438 F.3d at 278 ("The timing of the sales was also suspect in that they occurred just six weeks before [the defendants] resigned."). We conclude that this argument does not cut deeply in favor of either position.

Second, CLPF contends that the divorce decree should not have been considered, as Fifth Circuit precedent permits admission of public documents only to prove the existence of their written contents, not the truth of those contents. Cf. Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017–18 (5th Cir. 1996) (discussing admission of publicly-available documents filed with the SEC). Here, however, the document's written terms themselves indicate the reason Reynolds had for selling the shares. The "truth" of the document is not at issue, as might be the case if the terms of the divorce were in dispute. The divorce decree was properly considered.

Third, CLPF points out that the divorce decree awarded substantial property to Reynolds, including real estate, a sports car, and a motorcycle. Accordingly, CLPF asserts that it is unclear whether the divorce decree actually created any financial obligations. The implications of the divorce decree are equivocal; they do not counsel a conclusion that it renders the sale non-suspicious.

---

[4] A 10b5-1 plan is an agreement "which allows corporate insiders to set a schedule by which to sell shares" over time, and which can "raise an inference that the sales were pre-scheduled and not suspicious." Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003).

Fourth, CLPF convincingly suggests that the attempt to use the 10b5-1 Plan as a non-suspicious explanation is flawed because, inter alia, Reynolds entered into the Plan during the Class Period. IES fails to provide a direct response to this assertion. Accordingly, the insider trading allegations contribute to an inference of scienter on the part of Reynolds.

(4)    Sarbanes-Oxley certifications

CLPF also points to the Sarbanes-Oxley certifications signed by Allen and Reynolds as indicative of scienter. Reynolds and Allen both signed certifications that were attached to the company's 10-K. The Sarbanes-Oxley Act states that signing officers must certify that they are

> responsible for establishing and maintaining internal controls [and] have designed such internal controls to ensure that material information relating to the [company] and its consolidated subsidiaries is made known to such officers by others within those entities, particularly during the period in which the period reports are being prepared.

15 U.S.C. § 7241(a)(4). IES argues that these certifications are irrelevant to scienter because they are merely statements of opinion.

Other courts have viewed such certifications as indicative of scienter. See In re: Lattice Semiconductor Corp. Sec. Litig., No. CV 04-1255-AA, 2006 WL 538756, at *18 (D. Or. Jan. 3, 2006) ("The Sarbanes-Oxley certifications, [combined with other allegations], are sufficient to create a strong inference of actual knowledge or of deliberate recklessness."); cf. In re: Michaels Stores, Inc. Sec. Litig., No. 3:03-CV-0246, 2004 WL 2851782, at *12 & n.11 (N.D. Tex. Dec. 10, 2004) (rejecting use of Sarbanes-Oxley certifications as a basis for drawing a strong inference of scienter because the statements in the particular certification were not sufficiently related to the alleged misstatements in the complaint).

The Eleventh Circuit recently addressed the interaction of Sarbanes-Oxley and the scienter requirement for securities fraud claims in Garfield v. NDC

Health Corp., 466 F.3d 1255, 1266 (11th Cir. 2006). The court rejected a reading that would permit a strong inference of scienter from the certification alone. "If we were to accept [this] proffered interpretation of Sarbanes-Oxley, scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." Id. The court, however, went on to hold that such an inference was proper "if the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions." Id. This interpretation of the statute is plausible.

CLPF does not clearly explain the link between these statements about the internal controls and the actual accounting and reporting problems that arose. IES urges that there is not an allegation that on the particular date the certifications were made, the internal controls at IES were inadequate. We hold that the Sarbanes-Oxley certifications at issue here do not permit an inference of scienter.[5]

(5)    Collective impact

The tension between the parties, unsurprisingly, is over how specifically the allegations in the CAC must be pleaded in order to avoid dismissal. The flaw in CLPF's argument is its failure to link the misstatements with the bases for inferring scienter. CLPF's allegations read in toto do not permit a strong inference of scienter. Therefore, we conclude that the CAC fails to meet the pleading requirements of the PSLRA and must be dismissed.

B.    Amendment

---

[5]   The CAC contains various other allegations that arguably permit an inference of scienter. We conclude that these other allegations do not contribute to a strong inference of scienter.

CLPF contends that, even if the CAC failed to satisfy the PSLRA's particularity requirement, the district court abused its discretion in refusing to permit amendment. In responding to the motion to dismiss, CLPF sought leave to amend the CAC "[i]f indeed there were defects in Plaintiffs' Complaint," on the basis of information obtained during depositions of two former IES employees taken in a California state court proceeding. The district court did not explicitly address this request but implicitly rejected it by entering a judgment of dismissal with prejudice. CLPF argues that the district court's failure to provide reasons for not permitting amendment requires reversal. The Supreme Court has stated that

> [o]f course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Foman v. Davis, 371 U.S. 178, 182 (1962). CLPF notes that the district court did not provide a reason for its denial of leave to amend. "When the reason for the denial is readily apparent, however, a district court's failure to explain adequately the basis for its denial is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." Mayeaux v. La. Health Serv. and Indem. Co., 376 F.3d 420, 426 (5th Cir. 2004) (internal quotation omitted). IES does not dispute either the general legal principles regarding leave to amend or the contention that the district court articulated no reasons for denying the motion. Instead, IES asserts that the justifications for denying the motion were readily apparent.

IES contends that CLPF failed to affirmatively make a motion for leave to amend but instead merely mentioned amendment in passing, noting that it should be allowed "to fix any infirmity" on the basis of the two deposition transcripts that allegedly included evidence of other problems at a different IES

subsidiary. We generally will not construe unelaborated, nested requests for amendment as motions to amend. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 387 (5th Cir. 2003) (alteration in original) (internal quotation and citation omitted).

While relatively vague, the request for leave to amend in CLPF's response was not devoid of any indication of the grounds for amendment. It included a statement that CLPF possessed corroborating testimony from two additional sources. CLPF asserts that the amendment would corroborate its allegations, thus rendering the complaint sufficient to avoid dismissal. Though we discourage litigants from moving to amend in haphazard fashion, we construe CLPF's request "to fix any infirmity" as a proper motion to amend.

Permissible reasons for denying a motion for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182.

IES asserts that CLPF's request to amend was futile because the deposition transcripts do not identify Reynolds at all and only mention Allen in passing during what is essentially speculation by the deponent. As such, amendment with information from these depositions would not have cured the defects in the CAC. We agree and accordingly hold that amendment would have been futile. The district court did not abuse its discretion in denying the motion to amend.

## IV. CONCLUSION

The judgment of the district court, dismissing the CAC with prejudice, is AFFIRMED.