LOCAL 731 I.B. OF T. EXCAVATORS AND PAVERS PENSION TRUST FUND, individually and on behalf of all others similarly situated

v.

DIODES, INC., et al.

No. 6:13cv247

United States District Court, E.D. Texas, Tyler Division.

Signed September 15, 2014

Catherine Kowalewski, James Albert Caputo, Robbins Geller Rudman & Dowd LLP, San Diego, CA, Samuel H. Rudman, Mario Alba, Jr., Robbins Geller Rudman & Dowd, Melville, NY, Thomas John Ward, Jr., Jack Wesley Hill, Ward & Smith Law Firm, Longview, TX, for Plaintiff.

Bridget J. Russell, John P. Stigi, III, Paul Seeley, Sheppard Mullin Richter & Hampton, Los Angeles, CA, Charles Watts Flynn, IV, Ethan Michael Lange, Roy William Hardin, Locke Lord Bissell & Liddell, LLP, Dallas, TX, for Defendant.

### MEMORANDUM ORDER AND OPINION

MICHAEL H. SCHNEIDER, UNITED STATES DISTRICT JUDGE

Currently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 23). In this securities class action suit, Plaintiff alleges that Defendants violated the Security and Exchange Act of 1934 by disseminating public statements that were materially misleading. Defendants urge this Court to find that Plaintiffs failed to satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4, *et seq.* After considering the parties' arguments, the applicable law, and the facts as pleaded, the Court is of the opinion Defendants' motion should be **GRANTED** and Plaintiff's claims **DISMISSED WITH PREJUDICE.**

*Background*

## A. The Parties

This securities class action revolves around the statements and actions of Defendants Diodes, Inc. and two officers of Diodes: President and CEO Ken–Shew Lu and Chief Financial Officer Richard White. Diodes manufactures and sells semiconductors that are incorporated into a variety of computing, communications, and automotive products. Although headquartered in Plano, Texas, Diodes's primary manufacturing facility is located in Shanghai, China.

Plaintiff Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund is a purchaser of 2,820 shares of Diodes's common stock. Plaintiff alleges that Defendants misled the investing public in statements made between February 9, 2011 and June 9, 2011.

## B. Public Statements

On February 9, 2011, Diodes issued a press release that Lu signed announcing Diodes's success in the fourth quarter of 2010 (Q410) but noting that Diodes did not expect to replicate the same numbers for the first quarter of 2011 (Q111). The press release explained that "[Diodes's] manufacturing output is being affected by reduced equipment utilization caused by China labor shortages and fewer working days and the Chinese New Year in February."

Also on a February 9, 2011 conference call with analysts and investors, Lu responded to a question about the labor shortage. Lu stated that China's latest "five-year plan" emphasized industrial development inland and, consequently, laborers who had migrated to the coast were returning home. Lu also noted that workers were returning home for the Chinese New Year earlier than in the past. But

Lu went on to state that Diodes would hire more workers and, after six to eight weeks of training, the problem would be solved by the second quarter of 2011 (Q211). Following the February 9, 2011 press release and conference call, Diodes's stock price rose on heavy trading volume.

On May 9, 2011, Lu signed another press release reporting the results of Q111. The release reported that Diodes met the low end of the projections in the February 9, 2011 press release and also commented that "[t]he quarter was impacted by reduced unit output from our Shanghai packaging facility ... caused by China labor shortages mentioned last quarter and a larger than normal number of workers not returning from the Chinese New Year holiday." Lu noted that Diodes "shipped from finished goods inventory" and continued to "hir[e] manufacturing operators to ensure maximum equipment utilization by matching fully-trained manpower with the available equipment."

The following day, Diodes made two more public statements regarding labor issues in Shanghai. First, Lu stated on a conference call with analysts and investors that he believed Diodes would have the labor shortage issue resolved by the end of Q211. Second, while presenting at a conference, White responded to a question about when Diodes first realized there was a labor shortage with the following:

I think we saw right at Chinese New Year. The people leaving and not coming back was bigger than we expected. We've since replaced them, and we're in the training phase now. It takes six to eight weeks to train a person before you can just take them on the line and have them run a machine, but it takes about six months before they become efficient at running the semiconductor process.

Shares of Diodes's stock price dropped 10% while trading on heavy volume that day.

One month later, on June 9, 2011, Diodes issued a press release to update its guidance for Q211. The update was a downward revision of both projected gross revenue and profit margin. The press release attributed the downward revision to decreasing demand and "slower than expected recovery from the previously disclosed manpower shortages at the Company's China packaging facility."

### C. Plaintiff's Allegations

Plaintiff alleges that prior to Defendants' June 9, 2011 statement, Defendants failed to inform the investing public that Diodes's own policies at the Shanghai facility exacerbated labor issues, which affected Diodes's labor situation beyond the general labor pressures Shanghai faced after China's latest five-year plan. To support its allegation, Plaintiff relies on nine confidential witnesses, all of whom were Didoes employees.

According to the confidential witnesses, Diodes restricted holiday leave around the Chinese New Year, causing as many as 300 workers to leave the Shanghai facility in February 2011. Diodes then decreased days off for the remaining workers, which caused more workers to leave due to fatigue. The witnesses further testified that Diodes's hiring and training process could not keep pace with the departures.

Plaintiff also relies on the confidential witnesses as evidence of Defendants scienter. First, a witness disclose that Diodes' aging machinery caused defects in chip components, further decreasing output. Second, witnesses disclose that Diodes began shipping orders early, without customer authorization. Plaintiff contends Diodes's failure to disclose these facts to the investing public shows Defendants intent.

Plaintiff also alleges that stock sales by Diodes's insiders—particularly Defendant Lu—show that insiders benefited from the inflated price of its stock, thus demonstrating motive.

### Legal Standard

The Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007).

Securities fraud claims brought by private litigants are subject to the pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 (the PSLRA). The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). At a minimum, the PSLRA pleading standard incorporates that of Federal Rule of Civil Procedure 9(b). *ABC Arbitrage Plaintiffs Grp. v. Tchuruk,* 291 F.3d 336, 349–50 (5th Cir. 2002); *see also Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 362–63 (5th Cir.2004) (suggesting that the PSLRA adds to the 9(b) requirements).

The PSLRA also requires that the plaintiff "state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind," frequently referred to as the defendant's scienter. 15 U.S.C. § 78u–4(b)(2); *Southland,* 365 F.3d at 363. Scienter under the PSLRA means an "intent to deceive, manipulate or defraud or that severe recklessness in which the danger of misleading buyers or sellers ... is either known to the defendant or is so obvious that the defendant must have been aware of it." *Southland,* 365 F.3d at 366 (internal quotation marks omitted). Severe recklessness is "an extreme departure from the standard of ordinary care, ... that present[s] a danger of misleading buyers or sellers [that was] either known to the defendant or is so obvious that the defendant must have been aware of it." *Abrams v. Baker Hughes, Inc.,* 292 F.3d 424, 430 (5th Cir.2002) (internal quotation marks omitted).

■ The Court is guided by three principles when analyzing scienter allegations under the PSLRA. *See Ind. Elec. Workers Pension Trust Fund IBEW v. Shaw Grp., Inc.,* 537 F.3d 527, 533 (5th Cir.2008). First, the allegations are taken as true. *Id.* Second, the Court evaluates the allegations as a whole—not in isolation—to make its determination of whether a strong inference has been pleaded. *Id.* Third, the Court "must take into account plausible inferences opposing as well as supporting a strong inference of scienter" in order to determine whether the inference of scienter is "cogent and compelling" and not just "reasonable or permissible." *Id.*

■ Attributing the collective knowledge of a company's officers and employees to the individuals who make the misleading statements does not suffice. *See Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 208 (5th Cir.2009). Additionally, "omissions and ambiguities count against inferring scienter, for plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 326, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (internal quotation marks omitted). Further, the Court "will not strain to find inferences favorable to the plaintiffs" when determining whether scienter allegations have been sufficiently pleaded. *In re Alamosa Holdings, Inc. Sec. Litig.,* 382 F.Supp.2d 832, 843 (N.D.Tex.2005) (internal quotation marks omitted).

## *Analysis*

Plaintiff alleges that Diodes—through Lu's and White's statements—did not disclose the full scope of its labor problems in China. Defendants respond that the accused statements were not materially misleading because Diodes disclosed the existence of the labor shortage. Defendants also question whether Plaintiff provides sufficient information about the nine confidential witnesses for the Court to rely on their testimony.

But at the heart the parties' dispute is whether Plaintiff's complaint contains sufficient factual allegations to support a strong inference of scienter. Defendants' arguments about the materiality of the facts alleged to be omitted are generally an attack on whether those facts were omitted with the requisite scienter.

Because Plaintiff's allegations of scienter are founded almost entirely on the statements of confidential witnesses, the Court first considers the proper deference given such statements at the pleading stage. With that discussion in mind, the Court then turns to the sufficiency of Plaintiff's scienter allegations.

## A. Confidential Witnesses

 The Fifth Circuit cautions against reliance on confidential witnesses, even at the pleading stage. *See Ind. Elec.,* 537 F.3d at 535. In order to establish the reliability of confidential witness statements, Plaintiff's allegations must include "particular job descriptions, individual responsibilities, and specific employment dates for the witnesses." *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.,* 497 F.3d 546, 552 (5th Cir. 2007). But even if described "with sufficient particularity to support the probability that a person in the position occupied by the source ... would possess the information pleaded," the Court discounts allegations based on confidential witnesses. *ABC Arbitrage,* 291 F.3d at 353.

 With the exception of "Confidential Witness 7," Plaintiff describes the other eight confidential witnesses by only their job title. On the basis of that single detail, Plaintiff alleges several crucial facts linking Diodes's executives to actions taken by plant workers in Shanghai and customer sales representatives in Plano. Defendants argue that those allegations cannot support a strong inference of scienter.

Many facts alleged by the confidential witnesses are facts that anyone working in the confidential witness's respective positions would likely know. But crucial allegations linking key executives to on-the-ground decision-making also come from these confidential witnesses. And Plaintiff's allegations lack sufficient details to explain how someone in these positions would know about (1) conversations that took place between executives, (2) orders executives gave to other departments, (3) Diodes's accounting practices, or (4) that the hundreds of workers who left the Shanghai facility left to work for comparable manufactures with less

stressful operations. Without explanation of the confidential witnesses' job duties or the circumstances through which they acquired such facts, the court must make several inferences to connect several inferences must indulged to invent a scenario that allows someone with the witnesses' job titles to knowledge of the facts alleged. In view of the paucity of details supporting these allegations, the Court finds that these allegations cannot factor into the Court's scienter analysis. *See ABC Arbitrage,* 291 F.3d at 353.

## B. Scienter

The Court now turns to whether Plaintiff pleaded facts sufficient to give rise to a strong inference of scienter. Plaintiff alleges that the two sets of public statements were materially misleading: statements made in February of 2011 and statements made in May 2011.

### 1. February 2011 Statements

 Plaintiff alleges that these statements failed to disclose two things: (1) that the labor shortages in Diodes's Shanghai facility were more severe due to the company's own policies, and (2) that Diodes could not effectively train new workers fast enough, which reduced its operating efficiencies.

Plaintiff alleges circumstantial evidence to suggest that Defendants were at the very least severally reckless regarding the misleading nature of their statements.

 Plaintiff argues that that Defendants must have known of Diodes's policies in Shanghai and that those policies would exacerbate Diodes's labor issues. But that approach has been squarely rejected by the Fifth Circuit, which "makes clear that 'pleading[s] of scienter may not rest on the inference that defendants must have been aware of the misstatement.'" *See Ind.*

*Elec,* 537 F.3d at 535. (quoting *Abrams,* 292 F.3d at 432) (alteration in original).[1]

### 2. May 2011 Statements

 Plaintiff alleges that these statements failed to disclose four things: (1) that the labor shortages in Diodes's Shanghai facility were more severe due to the company's own policies, (2) that Diodes could not effectively train new workers fast enough, which reduced its operating efficiencies; (3) that some of the fabricated chips from Diodes's Missouri facility had defects caused by aging equipment; and (4) Diodes shipped customers' orders early without their authorization to cover up the loss of operating efficiency. Plaintiff also bolsters these allegations by pointing to insider stock sales during the period to provide motive for Defendants' scienter.

Whether Defendants acted with the requisite scienter on these facts is closer question than the February 2011 statements. This is largely due to the allegation of shipping customers' orders early without their authorization. Unlike Plaintiff's other allegations, which rest on a "must of have known" inference, Confidential Witness 7, who worked in the executive suite of Diodes's Plano Office with Lu and White, plausibly connects high ranking executives to the channel stuffing allegation through sufficient details Plaintiff provides in the complaint. *ABC Arbitrage,* 291 F.3d at 353.

The Supreme Court addressed channel stuffing concerns in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). In *Tellabs,* the plaintiff alleged that the defendant misrepresented the strength of demand for the company and engaged in channel stuffing to create the *appearance* of strong demand. The defendant-company leveraged its claims about the demand for one of its product to keep investors believing in the company. *Id.* at 335 n. 2, 127 S.Ct. 2499 (Alito, J., concurring). On remand, the Court of Appeals for the Seventh Circuit found that a strong inference of scienter arose from the channel stuffing allegation because the demand for the channel-stuffed product was the misrepresented material fact. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.,* 513 F.3d 702, 710 (7th Cir.2008). Thus, channel stuffing can give rise to a strong inference of scienter when there is a direct relationship between the alleged misrepresentation and the benefits of channel stuffing. *Id.*

Unlike *Tellabs,* Plaintiff does not allege Defendants misrepresented the demand for its products. Instead, Plaintiff alleges that Defendants misstated Diodes's ability to produce enough products to meet demand. While the confidential witnesses allege that Diodes began shipping customers' orders early, that practice has no bearing on the problem of decreased output from the Shanghai facility.

 Further, there are many non-illicit reasons for a company to engage in channel-stuffing, such as shifting revenues from one quarter to another. *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 203 (1st Cir.

---

**1.** Even if the Court ignored precedent that holds "must have known" allegations are insufficient, Plaintiff's allegations do not provide a cogent or compelling inference of scienter because taking into account all other plausible inferences that arise from the facts alleged—as the Court must—gives rise a to a competing inference that is more cogent and compelling: due to the close proximity between Diodes implementing the policies in Shanghai and the February 2011 statements, it was unclear what effect the company-specific policies would have. That Lu simply did not foresee the ramifications of Diodes's policies in Shanghai is more plausible than the inferences Plaintiff seeks to draw from the facts pleaded. *See Ind. Elecs.,* 537 F.3d at 533.

1999). Thus, the value of the channel stuffing allegation in the scienter analysis "is weak." *Greebel,* 194 F.3d at 203.

That is especially true in light of the content of the May 2011 statements. In those statements, Diodes admitted that it shipped from finished goods inventory, which could suggest a decrease in production. If Defendants were trying to mislead investors about Diodes's productivity, simultaneously depleting Diodes's inventory by shipping orders early would only exacerbate the problem. Shipping orders early depletes inventory sooner, accelerating when it would become apparent that Diodes's loss in productivity would prevent it from fulfilling its customers' orders. Thus, the allegation of channel stuffing actually undercuts Plaintiff's allegation because channel stuffing is inconsistent with the allegation that Diodes understated a loss in productivity. *See Greebel,* 194 F.3d at 203.

The remaining facts alleged are circumstantial allegations that Defendants must have been aware of the material facts Plaintiff alleges were omitted. As discussed above, such allegations are not sufficient to establish scienter. *See Indiana Elecs.,* 537 F.3d at 533.

But Plaintiff also contends that Defendants' omissions give rise to a strong inference of scienter in view of Lu and White's stock sales during the class period. Motive allegations based on insider trading raises a strong inference of scienter when (1) the trading is large in proportion to a defendant's past practices, (2) is inconsistent with the defendant's past practices, and (3) trading is accompanied by suspicious sales by other insiders. *See id.*

Although the complaint lists many stock sales by insiders during the class period, Plaintiff does not provide sufficient factual detail about these sales other than those by Defendant Lu. For these insiders, Plaintiff provides only the number of shares they sold during the class period, with no information relating to the insiders' prior practices or the overall percentage of their stock holdings sold. Further, Plaintiff alleges that most of the sales occurred after Diodes's May 2011 statements, when the stock price dropped in response to the revelation that the labor shortage continued to curb production. The lack of relevant information about these sales coupled with the fact that most of them did not take place during an advantageous time period precludes these allegations from supporting a strong inference of scienter. *See Abrams,* 292 F.3d at 435.

Finally, while Plaintiff alleges detailed facts regarding Lu's stock sales, those facts are insufficient to support a strong inference of scienter. Lu sold approximately 12% of the shares under his control. Those sales all occurred prior to the May 2011 statements, after which Diodes's share price declined. Prior to the class period, Lu only sold a small portion of his shares (in December 2010 and January 2011). Since the class period, Lu sold only a small portion of his shares once. All of these facts fit the mold of suspicious sales. *See id.*

But no strong inference of scienter arises from those facts. Lu sold during the class period a far lower percentage of his shares than previously found not to raise a strong inference of scienter—especially when no facts support suspicious sales from other insiders. *Southland,* 365 F.3d at 368–69; *Nathenson v. Zonagen Inc.,* 267 F.3d 400 (5th Cir.2001); *Abrams,* 292 F.3d at 435.

Considering all the facts alleged, Plaintiff argues that they create a cogent and compelling inference of scienter. But those allegations are insufficient to do so

in view of the competing, even stronger inference that Defendants simply miscalculated the degree and duration of its labor issues. Thus, while an inference of scienter might be permissible under normal pleading standards, the allegations do not establish an inference scienter that is as "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314, 127 S.Ct. 2499.

### Conclusion

For the reasons stated more thoroughly above, Defendants Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 23) is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

It is **SO ORDERED.**